[Civ. No. 32782. First Dist., Div. Two. Mar. 5, 1975.]

COUNTY OF ALAMEDA, Plaintiff and Appellant, v.
JAMES V. LOWRY, as Director, etc., et al., Respondents and Defendants.

## COUNSEL

Richard J. Moore, County Counsel, and Kelvin H. Booty, Jr., Deputy County Counsel, for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and Harold Friedman, Deputy Attorney General, for Defendants and Respondents.

## OPINION

KANE, J.—On June 29, 1971, appellant, County of Alameda ("County") filed a petition for writ of mandate and other appropriate relief,[1] in an attempt to compel the Director of the Department of Health[2] ("Direc-

---

[1] Including declaratory and injunctive relief.

[2] James V. Lowry, M.D. was the then Director. The Department of Mental Hygiene has been subsequently changed to the Department of Health.

tor") to pay certain moneys allegedly due to County under the Short-Doyle Act.[3] On December 3, 1971, the court, in a minute order, denied the petition for writ of mandate and discharged the alternative writ.[4] After a hearing, the court made its findings of fact and conclusions of law and, on August 8, 1972, judgment was entered.

Prior to October 1, 1969, County submitted to Director, as required by section 5650, its county Short-Doyle plan for the fiscal year 1970-1971. Said plan complied with all the requirements of the Short-Doyle Act. Director approved reimbursement in the amount of $3,948,475 and then subtracted 10 percent of this approved total pursuant to section 5705, which requires that the state/county ratio shall be 90 percent state funds and 10 percent county funds; the resultant $3,553,628 is called the "Maximum Possible [State] Reimbursement." Next, Director subtracted an "estimated savings,"[5] in advance of any realization thereof, of $284,290,[6] leaving $3,269,338 as the "total state reimbursement," which sum was allocated to County. When County did not have any savings during the 1970/1971 fiscal year, it demanded payment of the full 90 percent state share, which was that amount represented by the "Maximum Possible [State] Reimbursement" less, of course, the amount already allocated. When Director refused to pay, County initiated this suit.

The issues presented are:

1. Does the Director have the discretion within the comprehensive statutory scheme to use the "estimated savings" device, and if so, is there any obligation to meet the "Maximum Possible [State] Reimbursement" if such estimated savings are not realized?

2. Were there material issues of fact in controversy which would preclude a final judgment without a trial to resolve those issues?

---

[3]Welfare and Institutions Code, section 5600 et seq. All statutory references, unless otherwise specified, will be to this code.

[4]The minute order was, through inadvertence, omitted from the clerk's transcript; however, we augment the record on appeal on our own motion pursuant to rule 12(a), California Rules of Court.

[5]The term "estimated savings" represents that portion of the approved amount for reimbursement which will more than likely not be spent by the counties in the operation of mental health services under the approved Short-Doyle Act.

[6]The estimated savings were calculated at 8 percent. This was based on differences between the state allocation and the total claimed by appellant during the years 1966-1970. The percentage of savings ranged from a high of 18.4 percent in 1966/1967 to a low of .6 percent in 1968/1969.

As this opinion will subsequently make clear, the disposition of the first issue makes unnecessary any resolution of the second.

A primary purpose of the Short-Doyle Act is to "organize and finance community mental health services for the mentally disordered in every county through locally administered and locally controlled community mental health programs" (§ 5600). The act was intended to provide a "means of allocating state mental health funds according to community needs" and to "establish a uniform ratio of local and state government responsibility for financing mental health services" (§ 5600). This uniform ratio, which is to continue the approximate 1968-1969 ratio of state-county mental health expenditures, is expressly set forth by the Legislature as "90 percent state funds and 10 percent county funds, irrespective of where or by whom the services are provided . . ." (§ 5705). The limitation on county participation is made forcefully clear where the Legislature on the one hand permits a county to appropriate additional funds for mental health services (§ 5709), and allows the Director of Health to reallocate certain funds (§ 5708), but specifies that "[i]n no event shall counties be required to appropriate more than the minimum amount required to finance 10 percent of the legally required services . . ." (§ 5709). This 10 percent limitation is further limited in situations where the county Short-Doyle plan for a fiscal year would exceed, under certain circumstances, the amount which the county, during the immediately preceding fiscal year, expended under its share of the plan (§ 5709.5). It can, therefore, be unequivocally stated that the statutory scheme manifests a legislative intent to limit a county's participation to 10 percent.

"In order to maintain its effort in the mental health field the Legislature should appropriate a sum to pay County Short-Doyle Plans which is at least equal to the appropriation for mental health services during fiscal year 1968-1969 . . ." (§ 5706). In addition to this "statutory directive," the Legislature also provided the Director of Health with statutory discretion in situations where necessary moneys are not forthcoming. The Director of Health is directed to allocate funds pursuant to that which is specified in the statutory scheme (§ 5753). This scheme requires that the "approved County Short-Doyle Plans shall be financed within the fixed amounts appropriated each year by the state and the counties . . ." (§ 5707). Therefore, if the Legislature fails to provide sufficient funds, it is incumbent upon the director to act accordingly; if "in any fiscal year the approved [legislative] appropriation is insufficient to finance the programs and services specified by this

subdivision, the Director of . . . [Health] shall have the authority to determine the amount of state funds available to each county for such purposes in accordance with the priorities in both the state and county plans."[7] (§ 5704.) Even though this specific language no longer appears in section 5704, it is clear that the Director of Health possesses great discretion in the allocation of funds; section 5707 limits his approval to the fixed amounts appropriated by the state but does not limit his discretion in the allocation itself, and section 5703 allows him to "determine the amount of state funds available. . .for specific services. . . from the funds appropriated. . . ." Consequently, while the Director of Health is required to review each county Short-Doyle Plan to determine, inter alia, that the plan complies with statutory requirements and standards adopted for their implementation (§ 5752), he has discretion in approving the plan (§ 5754), as well as in allocating funds subsequent to approval thereof (§ 5703). This discretion is not limited to initial approval of county Short-Doyle plans; "The Director of Health may reallocate among county Short-Doyle plans the state share of any savings occurring during the year in services provided under the county Short-Doyle plans." (§ 5708.) It is clear, however, that once a plan has been reviewed and approved by the Director,[8] "the County Short-Doyle Plan shall be deemed to be a contractual arrangement between the state and county" (§ 5707).

It is within this statutory scheme that the issues herein must be resolved. This scheme clearly manifests the following:

1. A county's financial contribution under an approved county Short-Doyle plan is limited to 10 percent of the expenditures approved (§§ 5705, 5709 and 5709.5).

2. The Director of Health must limit the amount of his aggregate approval to that which is appropriated by the Legislature, but he has the discretion to allocate, within this limitation, all moneys as he deems necessary and proper (§ 5707). This discretion extends to allocations for specific mental health services within approved plans (§ 5709), as well as to reallocation of funds *saved,* during the actual operation of a county Short-Doyle plan (§ 5708).

[7]While section 5704 still deals with priorities in allocating funds, the specific language quoted was eliminated when this section was repealed by Statutes of 1971, chapter 1609, section 5. However, for purposes here, the language is fully operative.

[8]The assumption here is that the county also approves of the plan, for only then is the contract established (§ 5707).

3. Review and approval of a county Short-Doyle plan, by the Director of Health, plus county approval, establishes a binding contract between the state and the county (§ 5707).

Director asserts that the "estimated savings" factor is an accounting technique which has been used in computing state reimbursements under the Short-Doyle Act since its enactment in 1967. He claims that, faced with county requests exceeding the amount appropriated by the Legislature, he could have: (1) approved a plan where the total costs approved equaled the maximum allocation of state and county funds, which would necessitate a cut in the amounts requested by the counties, or (2) apply, as he did, the "estimated savings" factor after the approval of a maximum allocation which exceeded the amount appropriated by the Legislature.

Director's first contention that he could have limited approval to the amount appropriated by the Legislature is certainly correct, for section 5707 requires that the "County Short-Doyle Plans shall be financed within the fixed amounts appropriated each year by the state and the counties . . . ." If he did limit his approval in this way, there would be no question that the 90/10 state-county ratio of section 5705 would be met. There would also be no question of any violation of the contract established by section 5707.

The question to be resolved, therefore, is whether the Director of Health can, as an alternative to limiting approval to the amount appropriated by the Legislature, adopt the "estimated savings" budgetary device and still comply with the mandate of the statutory scheme. From the outset, it must be recognized that there is no express statutory authorization for such a procedure. In fact, there is some statutory authority which indicates a legislative intent to preclude the "estimated savings" approach. Section 5708 provides that "The Director of Health may reallocate among county Short-Doyle plans the state share *of any savings* occurring during the year in services provided under the county Short-Doyle plans." (Italics added.) Given this legislative plan for dealing with "savings," it is difficult to accept the premise that the Director of Health may, within the purview of his statutory discretion, estimate the prospective savings and deduct an appropriate amount from the "Maximum Possible [State] Reimbursement." Assuming, without deciding, that such discretion is properly available under the statutory scheme, it is necessary to review the consequences of the "estimated savings" vis-à-vis the manifestations of legislative intent set forth above.

Theoretically, if the Director of Health were sufficiently perspicacious, his estimated savings could equate to "actual savings"; his allocation would, therefore, in effect be the same as if he were to reduce the allocation to equal the available funds in the first instance. We are, however, dealing not with the theoretical but with the actual; Director, in estimating appellant's prospective savings, had actual savings from previous years (which ranged from a high of 18.4 percent in 1966/1967 to a low of .6 percent in 1968/1969) as a guide; and he estimated and applied a savings factor of 8 percent. *Yet no savings were actually realized.* Therefore, it is incumbent to examine the legal ramifications when, as here, actual savings are not forthcoming.

■ County asserts that the application of the estimated savings device contravenes the statutory scheme. We concur. Where, as here, "estimated savings" did not materialize, and Director asserts that there is no legal obligation to pay additional moneys, the appellant in effect must finance more than the 10 percent contemplated by the Short-Doyle Act; the obligation representing the estimated savings of 8 percent is effectively transferred from the state, as part of the "Maximum Possible [State] Reimbursement," to County. This is clearly not what the Legislature intended, as manifested by sections 5705, 5709, and 5709.5. It also contravenes the contract created between the parties; for how can the approval of a plan for $3,948,475, under which the state's contribution is correctly calculated to be $3,553,628, create a contract pursuant to section 5707 on the one hand, and at the same time limit its contribution to an amount *less* than the 90 percent dictated by the statutory scheme? Clearly, Director is on the horns of a dilemma; if it is asserted that under the contract formed the state's obligation is $3,269,338,[9] the 90/10 percent ratio posited by sections 5705, 5709 and 5709.5 would be violated, and if the obligation under the contract is for $3,553,628,[10] Director is in violation thereof by refusing to acknowledge any further obligation thereunder. Therefore, it appears clear that Director cannot satisfy the statutory requirements by applying the "estimated savings" budgetary device. In any case, as mentioned above, there is some doubt in face of section 5708, which provides for reallocation of *actual* savings incurred during the year, whether the "estimated savings" approach is within the discretion of the Director of Health *in the first instance.*

Consequently, given the reallocation of actual savings occurring

[9]Maximum Possible [State] Reimbursement of $3,553,628 less an estimated savings (8 percent) of $284,290.

[10]The total amount approved for reimbursement ($3,948,475) less 10 percent.

during the year (§ 5708), and the impossibility of complying with the statutory scheme using the "estimated savings" approach, the Director of Health must, in a situation of limited funds, limit the aggregate amount he approves, not by applying an estimated savings factor, but by limiting the initial approval to that amount appropriated by the Legislature, for only then will there be compliance with the statutory scheme.

The judgment is reversed with directions to issue a writ of mandate directing Director to reimburse County in the sum of $112,447.

Taylor, P. J., and Rouse, J., concurred.