[Civ. No. 22891. Third Dist. Sept. 27, 1984.]

COUNTY OF SACRAMENTO, Plaintiff and Respondent, v.
AL M. LOEB, as Director, etc., et al., Defendants and Appellants.

COUNTY OF ALAMEDA, Plaintiff and Respondent, v.
AL M. LOEB, as Director, etc., et al., Defendants and Appellants.

## COUNSEL

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Robert L. Mukai, Deputy Attorney General, for Defendants and Appellants.

L. B. Elam and Richard J. Moore, County Counsel, Anthony L. Wright and Charles L. Harrington, Deputy County Counsel, for Plaintiffs and Respondents.

## OPINION

CARR, Acting P. J.—In these consolidated proceedings, respondent state officers and agencies (hereafter the State) appeal from the granting of a peremptory writ of mandate to plaintiffs County of Sacramento and the County of Alameda (hereafter the Counties). The dispute centers on the Counties' claims against the State for amounts concededly underpaid in previous fiscal years for the State's share of expenditures under the Short-Doyle Act. (Welf. & Inst. Code, § 5600 et seq.) The writ issued by the superior court is three-fold: (1) it compels the director of State Department of Mental Health to submit the Counties' claims to the State Board of Control (Board) with his recommendation that the claims be approved; (2) it commands the Board to determine whether any current appropriation is available for Short-Doyle purposes and, if so, to approve payment of the Counties' claims from such appropriation; and (3) it requires the State Controller to pay the claims once approved by the Board.

On appeal, the State contends: (1) mandate does not lie to control the Board's discretion; (2) although there may be current Short-Doyle appropriations, these funds are not "available" as they have already been allocated for current year needs; and (3) the Controller cannot be mandated to

pay claims in the absence of an appropriation therefor. We conclude the State misperceives the nature of the Board's discretion. Further, that the trial court's order requires the existence of an appropriation available in fact before the Controller is commanded to make payment. For those reasons, we shall affirm.

## STATUTORY BACKGROUND

The purpose of the Short-Doyle Act is to "organize and finance community mental health services for the mentally disordered in every county through locally administered and locally controlled community mental health programs." (Welf. & Inst. Code, § 5600.) To do this, the act establishes "a uniform ratio of local and state government responsibility for financing mental health services." (*Ibid.*) That ratio is set at "90 percent state funds and 10 percent county funds, irrespective of where or by whom the services are provided, . . ." (Welf. & Inst. Code, § 5705, subd. (a).)

Each county submits a Short-Doyle plan for mental health services in the county to the State Director of Mental Health. (Welf. & Inst. Code, § 5650 et seq.) The director reviews each plan to ensure it meets certain standards. (Welf. & Inst. Code, § 5752.) If approved, the director then determines the amount of state funds available for each county plan from the funds appropriated for mental health services and allocates the funds accordingly. (Welf. & Inst. Code, §§ 5703, 5753.) The director possesses great discretion in the initial allocation of funds. (*County of Alameda* v. *Lowry* (1975) 45 Cal.App.3d 736, 740 [119 Cal.Rptr. 725].) Moreover, the director has discretion to reallocate any savings occurring during the year in Short-Doyle services. (Welf. & Inst. Code, § 5708.) However, once a county Short-Doyle plan is approved it becomes a contractual arrangement between the county and the state. (Welf. & Inst. Code, § 5707.) Counties may *elect* to appropriate more than their 10 percent share, but in no event can they be *required* to do so. (Welf. & Inst. Code, § 5709.)

The counties obtain reimbursement for the state's share of Short-Doyle expenditures by filing claims with the State Department of Mental health. (Welf. & Inst. Code, §§ 5714, 5714.1.) "Each claim for state reimbursement shall be payable from the appropriation made for the fiscal year in which the expenses upon which the claim is based are incurred, . . ." (Welf. & Inst. Code, § 5714.1.) Short-Doyle expenditures are subject to payment, regardless of how the county provides the services (by contract, joint operation, etc.). The director may, however, make investigations and audits of such expenditures as he deems necessary. (Welf. & Inst. Code, § 5712.) The controversy in the present case arose from such an audit.

## FACTS

The undisputed facts, as found by the trial court, are as follows: "As a result of an audit, the State Department of Mental Health determined that it owes Sacramento County $137,023.00, plus interest, for the State share of Short-Doyle expenditures underpaid to the County for fiscal year 1975-1976. The audit was completed in June 1980. On December 3, 1980, the State Department of Mental Health submitted a claim to the Board with a recommendation that the Board allow the claim to be paid from the general fund. On April 17, 1981, the Board approved the claim to the extent it involved state funds ($26,141.00) but not federal funds, and included this portion of the claim in a special appropriations bill submitted to the Legislature. The Legislature deleted the claim from the bill, and the Department of Mental Health notified the County on December 15, 1981 that it could not settle the claim. . . . [¶] With regard to Alameda County, as a result of an audit, the Department of Mental Health determined that it owes Alameda County $420,132.00, plus interest, for the State share of Short-Doyle expenditures underpaid the County for fiscal years 1971-1972 through 1976-1977. The audit was completed in April 1980. The Department of Mental Health sought the federally funded portion of the State share from the Department of Health Services and submitted a claim to the Board for the State general fund portion. Like Sacramento County's claim, the Alameda County claim was included in the special appropriations bill but was deleted by the Legislature, and the amount claimed has not been paid."[1]

The Counties' inability to obtain satisfaction of their claim from the Legislature led to the mandate proceeding presently before us.

## DISCUSSION

### I

The State first contends that mandate is inappropriate to order performance of a discretionary act by the Board, relying on the familiar proposition that mandamus will not lie to control the discretion of a judicial officer or board. (See *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 579 [114 Cal.Rptr. 106, 522 P.2d 666].) But there is an equally well established exception to the cited rule in that the writ will lie if the discretion of the

---

[1]Certain facts, regarding the Counties' ability to offset their claims against amounts they owe the State, have been omitted. The Counties sought such an offset as an alternative remedy in the trial court. Although the trial court found authority for the offset, the court determined to reserve jurisdiction over the offset issue pending performance of the writ presently under consideration. Accordingly, the question of the propriety of an offset is not before us and we express no opinion on that issue.

òfficer or board can be exercised in only one way. (*Ibid.*) We conclude the present case is within the exception, and the writ was properly issued.

The Board became a necessary party to this action because the Department of Mental Health's audits did not reveal the underpayments until well after the fiscal year in which the shortfalls occurred. The Short-Doyle Act does not provide a mechanism for reimbursement once the period for presenting such claims expires (see Welf. & Inst. Code, §§ 5714, 5714.1) and we must look to general budgetary principles. The Government Code permits disbursements in liquidation of encumbered appropriations for two years after the last day an appropriation is available for encumbrance. (Gov. Code, § 16304.1.) Upon expiration of this two-year period, however, "the undisbursed balance in any appropriation shall revert to and become part of the fund from which the appropriation was made. Subsequent to reversion any unpaid encumbrance against the appropriation may be paid, with approval of the Board of Control, from any current appropriations available for the same purposes." (*Ibid.*) Pursuant to this section, the Board of Control's approval is a prerequisite to payment of the funds which the State concedes it owes. It is this approval the State contends cannot be controlled by mandamus. We disagree.

■ The State Board of Control is an administrative board exercising quasi-judicial powers. (*Chas. L. Harney, Inc.* v. *State of California* (1963) 217 Cal.App.2d 77, 97 [31 Cal.Rptr. 524].) It has the statutory authority to make rules and regulations (Gov. Code, § 13920), whose purpose is to establish an orderly procedure to advise the Legislature of claims against the State where there has been no provision for their payment. (*Id.,* at p. 96.) As the board acts in a quasi-judicial capacity, we perceive its function as that of an arbiter of the *validity* of claims against the state. (See Cal. Admin. Code, tit. 2, § 630.) It is empowered to conduct investigations, examine witnesses and receive evidence to make the determination of validity. (Gov. Code, § 13911.) ■ Where the facts are undisputed, however, the validity of a claim becomes a question of law susceptible to but one conclusion. (*Dufton* v. *Daniels* (1923) 190 Cal. 577, 581 [213 P. 949]; see also *Hurtado* v. *Superior Court, supra,* 11 Cal.3d at p. 579.) In such circumstances, mandate is appropriate to control an abuse of the board's discretion. (*Dufton* v. *Daniels, supra,* 190 Cal. at p. 580.) In *Hammel* v. *Neylan* (1916) 31 Cal.App. 21 [159 P. 618], the statute provided for a per diem payment to local sheriffs for the cost of transporting prisoners to and from state prisons. (*Id.,* at p. 25.) The statute further provided that the expenses " 'shall be allowed by the board of examiners and collected from the state.' " (*Ibid.*) The petitioner submitted his claim in the proper form to the board, which refused to approve the claim on the ground the petitioner had been overpaid in preceding years. (*Id.,* at pp. 22-23.) The court held

mandamus would lie to compel approval of the claim, as the Board's scrutiny was limited to whether the expenses were validly incurred. The board could not refuse to allow a concededly correct and properly presented claim on grounds other than those set out in the statute. The previous overpayments did not affect whether the present expenses were validly incurred. (*Id.*, at p. 26.)

*Hammel, supra,* 31 Cal.App. 21, teaches that if the claim is valid as a matter of law, the Board does not have the discretion to disallow the claim. The Legislature may not appropriate funds to *pay* the claim, but that is a different matter. To construe Government Code section 16304.1 as giving the Board unfettered discretion in the approval of claims, as urged by the State, would permit the Board to abrogate at will concededly valid contractual claims. The Board's discretion does not extend, however, to arbitrary, capricious and palpably unreasonable actions. (*Sanders* v. *City of Los Angeles* (1970) 3 Cal.3d 252, 261 [90 Cal.Rptr. 169, 475 P.2d 201].) Such an abuse of discretion may be corrected by mandate. (*Hammel* v. *Neylan, supra,* 31 Cal.App. at p. 28.) We therefore construe the phrase "with approval of the Board of Control," as contained in Government Code section 16304.1, to mean that such approval shall not be withheld where the unpaid encumbrance or claim is valid as a matter of law. The State's concession that the money is owing to the Counties, precludes a contention on this appeal that the present claims are not valid. We conclude it was an abuse of discretion for the Board to partially disapprove the Counties' concededly valid claims under Government Code section 16304.1. Mandate is the appropriate remedy. We next consider the remainder of the formula and determine whether there are "any current appropriations available for the same purposes" from which the claims may be paid. (Gov. Code, § 16304.1.)

## II.

The State contends the Board could not be compelled to approve the claims as it was shown all current Short-Doyle appropriations had already been allocated. The State equates the director's "allocation" of Short-Doyle appropriations under Welfare and Institutions Code section 5753 with "appropriations available" under Government Code section 16304.1. The evidence presented to the trial court disclosed for the fiscal year 1981-1982 a single appropriation of $335,052,610 was made for Short-Doyle purposes, and all this money had been allocated.[2] Ergo, the State urges, there are no

---

[2]In the trial court, the State attempted to distinguish between the Counties' entitlement to Short-Doyle Funds based upon whether they came from the State General Fund or the Federal Trust Fund. (See Gov. Code, §§ 16300, 16360.) As the trial court pointed out, however, funds deposited in the Federal Trust Fund are appropriated "*without regard to*

available appropriations from which to pay the Counties' claims. We do not accept the initial equation of allocation with availability.

We confront the same lack of a record that faced the trial court. When it issued its tentative decision in December 1982, the trial court knew that the 1981-1982 budget appropriation for Short-Doyle purposes was $335,052,610. (Stats. 1981, ch. 99, § 2, item 444-101-001.) It did not know, however, to what extent those monies remained available for Short-Doyle purposes. For that reason, the trial court did not specifically order payment of the claims, but directed the Board to determine whether any current Short-Doyle appropriation was available and only then to approve the claim. The propriety of this approach finds approval in *Mandel* v. *Myers* (1981) 29 Cal.3d 531 [174 Cal.Rptr. 841, 629 P.2d 935]. In *Mandel,* the plaintiff was awarded $25,000 attorney fees in a 1973 judgment against the State Department of Health Services. Plaintiff twice filed this claim with the Board, which approved it both times. (*Id.,* at pp. 537-538.) Each time the appropriation was submitted to the Legislature, however, it was deleted during committee proceedings on the budget. (*Ibid.*) Having been twice rebuffed, plaintiff returned to the trial court and obtained an order directing the State Controller to pay the attorney fees from the budget item appropriating funds for "operating expenses and equipment" for the State Department of Health Services. (*Id.,* at pp. 538-539.) The Supreme Court held that if appropriated funds were reasonably available for the expenditure in question, the separation of powers doctrine posed no barrier to a judicial order directing the payment of such funds. Moreover, the payment should be made without regard to an improper or invalid legislative restriction. (*Id.,* at p. 542.)

In *Mandel,* the Attorney General conceded there were more than sufficient funds remaining in the budget item "*at the time the trial court entered its order*" to cover the expenditure in question. (*Id.,* at p. 543; italics added.) Since the attorney fees were a proper expenditure under "operating expenses" and there were unexhausted funds available to meet the payment (see Gov. Code, § 12440), the order was upheld. (29 Cal.3d at p. 552.)

---

*fiscal year,* for expenditure for the purposes for which the money deposited therein is made available by the United States for expenditure by the state." (Gov. Code, § 16361; italics added.) Short-Doyle warrants are not drawn directly against the Federal Trust Fund, but are drawn against the General Fund, which is then reimbursed from the Federal Trust Fund. (Gov. Code, § 16365.) Accordingly, the distinction between the two funds is without meaning in this case. The Counties' Short-Doyle claims must be paid from an appropriation from the General Fund first, and then reimbursement from the Federal Trust Fund follows, because there is no fiscal year limitation on the monies contained therein. Apparently recognizing that the real issue in this case is the availability of a General Fund appropriation in the first instance, the State does not urge any relevant distinction between the two funds on appeal. We therefore consider this issue to be abandoned. (*Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].)

The present case differs from *Mandel* only in the lack of a record as to whether the 1981-1982 Short-Doyle appropriation had been exhausted at the time the trial court issued the writ. However, it would appear to be a straightforward matter for the Board to determine whether there were unexhausted funds in the 1981-1982 Short-Doyle appropriation at the time the trial court entered its order. If so, the writ was properly issued under *Mandel*.

The State urges the allocation and approval of the present year's Short-Doyle plans create contractual obligations it would be forced to violate if all the money allocated were not available and in effect asks this court to validate the robbing of Peter to pay Paul. The State deems it acceptable to deny payment concededly owed for work admittedly done so that its projected budgetary estimates for anticipated work will not be upset. We do not find it acceptable. By refusing to make payment for Short-Doyle services already performed, the State would be violating the directive of Welfare and Institutions Code section 5709 that "[i]n no event shall counties be required to appropriate more than the minimum amount required to finance 10 percent of the legally required services . . . ." If the State's underpayment is not made up, the Counties in effect must finance more than their 10 percent share for the audited years. As stated in *County of Alameda v. Lowry, supra,* 45 Cal.App.3d at page 742, "[t]his is clearly not what the Legislature intended, as manifested by [Welfare and Institutions Code] sections 5705, 5709 and 5709.5. *It also contravenes the contract created between the parties;* . . ." (Italics added.)[3] We do not countenance the breach of a fully performed contract so that the State can maintain a projected reserve for future contracts. Nor do we find such a circumstance inevitable.

The State apparently confuses the "contractual arrangement" created by the approval of a Short-Doyle plan (Welf. & Inst. Code, § 5707) with an encumbrance on a state budget appropriation. The Counties' assertion that the director's power of allocation is merely a budgetary device to permit efficient utilization of an enormous single appropriation is both sound and persuasive. The encumbrances on the appropriation occur when expenditures are incurred by the Counties pursuant to their respective plans. (Welf.

---

[3] *County of Alameda* v. *Lowry, supra,* 45 Cal.App.3d 736, involved a factual situation in which the director of mental health had allocated state Short-Doyle funds to the county by taking the total amount the county anticipated spending, reducing that amount by the county's 10 percent share, and further reducing that amount by an " 'estimated savings,' " to arrive at a figure for " 'total state reimbursement.' " (*Id.,* at p. 738.) During the fiscal year, however, the county did not have any savings whatsoever, and demanded payment of the full 90 percent share. (*Ibid.*) The court held the " 'estimated savings' " budgetary device contravened the statutory scheme to the extent it allowed the State to pay less than its 90 percent share. The court directed the trial court to issue a writ of mandate compelling the director to reimburse the county for the entire 90 percent. (*Id.,* at pp. 742-743.)

& Inst. Code, § 5712.) It is these *expenditures* which the Short-Doyle Act directs to be paid, not the director's preliminary allocations. (*Ibid.*) The Controller is not empowered to draw a warrant unless it is authorized by law and "unless, except for refunds authorized by Section 13144, unexhausted specific appropriations provided by law are available to meet it." (Gov. Code, § 12440.) We conclude the use of the phrase "unexhausted" in defining "available" in Government Code section 12440 is instructive in determining what current appropriations are "available" within the meaning of Government Code section 16304.1. If any part of the Short-Doyle appropriation for fiscal 1981-1982 remained unexhausted (i.e., unencumbered) at the time the trial court entered its order, it was "available" for satisfaction of a prior Short-Doyle encumbrance within the meaning of Government Code section 16304.1. We must leave this factual determination, as did the trial court, to the Board.

A practical problem remains which must be considered because of the passage of time. In our discussion, it was assumed that the trial court referred only to the 1981-1982 Short-Doyle appropriation when it directed payment from "any *current* appropriation" as the trial court was without power to order payment from funds that had not yet been appropriated by the Legislature. (*Mandel* v. *Myers, supra,* 29 Cal.3d at p. 539.) Accordingly, the words "current appropriation" as contained in the writ can have only one meaning: the appropriation then in existence. But the *actual* unexpended funds remaining from the 1981-1982 appropriation may not be sufficient to meet the Counties' claims. Moreover, "[u]pon the expiration of two years following the last day of the period of its availability, the undisbursed balance in any appropriation shall revert to and become a part of the fund from which the appropriation was made." (Gov. Code, § 16304.1.) As provided by Government Code section 16304, "[a]n appropriation shall be available for encumbrance during the period specified therein, or, if not otherwise limited by law, for three years after the date upon which it first became available for encumbrance." Although the line item appropriating money for Short-Doyle purposes in fiscal 1981-1982 contains no limitation on its availability (see Stats. 1981, ch. 99, § 2.00, item 444-101-001, p. 224), a prefatory section to the 1981-1982 budget contains the following provision: "The following sums of money, or so much thereof as may be necessary unless otherwise provided herein, are hereby appropriated for the use and support of the State of California for the 1981-82 fiscal year beginning July 1, 1981, and ending June 30, 1982." (Stats. 1981, ch. 99, § 2, p. 224.) It appears this section limits the availability of appropriations in the budget, unless otherwise provided, to the fiscal year stated therein. (See 12 Ops.Cal.Atty.Gen. 252, 253 (1948).) Accordingly, the last day the 1981-1982 Short-Doyle appropriation would have been "available for encumbrance" was June 30, 1982. If no disbursement in liquidation of the encum-

brance was made within two years, the undisbursed balance would revert to the General Fund on June 30, 1984. Therefore, even assuming there were sufficient available funds in the 1981-1982 Short-Doyle appropriation when the trial court entered the instant writ, those funds may no longer be available today.

The remedial relief for such a situation was formulated in *Serrano* v. *Priest* (1982) 131 Cal.App.3d 188 [182 Cal.Rptr. 387], wherein two law firms were attempting to collect attorney fees awarded them after a successful constitutional challenge to public school financing in this state. (*Id.*, at p. 191.) The trial court ordered that payment of the attorney fees be made from a specific line item in the Department of Education's budget appropriation for fiscal 1979-1980. (*Id.*, at p. 194.) After noting that the trial court's order could affect only the budget in existence at the time of the order, the appellate court stated that it had "a factual opportunity which was not available to the trial judge on [the date of the trial court's order]. We may examine the 1980-1981 and 1981-1982 appropriation measures, since enacted by the Legislature. Both budget bills appropriated funds for the 'operating expenses and equipment' of the Department of Education, only the amounts varied." (*Id.*, at p. 197; fn. omitted.) Under *Mandel* both of these subsequent appropriations were available for payment of the attorney fee award, and the appellate court modified the trial court's order to encompass those two appropriations. To alleviate the potential of future appeal should insufficient unexhausted funds remain in those appropriations, the court noted that the trial court's order could be amended to take into consideration further appropriations as they were enacted. (*Id.*, at p. 198.) In this manner, payment of the award was ensured.

In the present case, the trial court's writ of mandate was necessarily limited to the 1981-1982 budget line item "For local assistance, Department of Mental Health." (Stats. 1981, ch. 99, item 444-101-001, p. 440.) As in *Serrano* v. *Priest, supra,* 131 Cal.App.3d 188, the three subsequent budget acts have made similar Short-Doyle appropriations for "local assistance," varying only in amount. (Stats. 1982, ch. 326, item 444-101-001, p. 1049; Stats. 1983, ch. 324, item 444-101-001, p. —; Stats. 1984, ch. 258, item 4440-101-001.) It follows that if the unexpended, unencumbered funds in the 1981-1982 appropriation for Short-Doyle purposes are either insufficient or unavailable to meet the Counties' claims, recourse may be had to any unexpended, unencumbered funds remaining in these subsequent appropriations.[4] We shall so modify the judgment. (*Serrano* v. *Priest, supra,* 131 Cal.App.3d at p. 198.)

---

[4]As shall be discussed *infra,* the Legislature expressly contemplated the payment of claims such as those involved in this case from the 1984-1985 budget. (See Stats. 1983, ch. 879, § 1.)

## III.

The State further contends the State Controller cannot be commanded to pay the Counties' claims in the absence of an appropriation therefor. Reliance is placed on this court's opinion in *California State Employees' Assn.* v. *Cory* (1981) 123 Cal.App.3d 888 [176 Cal.Rptr. 904], in which the issue was interest on a seven percent salary increase given state employees in the 1979 Budget Act. (*Id.,* at p. 890.) Payment of this increase was delayed by a mandate action seeking to declare the increase unconstitutional. Although this action failed, the payment was delayed for a sufficient time that the employees sought interest on the increase during the delay. (*Id.,* at pp. 890-891.) It was conceded the employees had a statutory right to such interest, but the Legislature had not made an appropriation for any interest in the budget act. (*Id.,* at p. 891.) We concluded that to the extent the State earned interest on these funds during the delay, the interest was treasury money for which no appropriation had been legally authorized. (*Id.,* at p. 895.) Accordingly, we denied the employees' petition for a writ to compel the Controller to pay the interest, but we presumed " 'that the proper steps will be taken to appropriate the amount required' " to pay the amount to which the employees were entitled. (*Id.,* at p. 895.)

*California State Employees' Assn.* v. *Cory, supra,* 123 Cal.App.3d 888, is not applicable to the instant facts. We noted in the *Cory* decision, *supra,* that *Mandel* found the " '"operating expenses and equipment'" " category of the appropriation sufficiently broad to encompass the court-awarded attorney fees. (*Id.,* at p. 896.) Further that *Mandel* was distinguishable from *Cory* because in *Cory* there was "no extant appropriation by the Legislature from which to order payment." (*Ibid.*) The present case is distinguishable from *Cory* for the same reason. Each year the Legislature appropriates funds "for local assistance" under the Department of Mental Health. In the 1981-1982 Budget Act a provision of this appropriation stated: "the amounts appropriated above are for assistance to local agencies in the establishment and operation of mental health services, in accordance with the provisions of Division 5 (commencing with Section 5000) of the Welfare and Institutions Code, . . ." (Stats. 1981, ch. 99, item 444-101-001, p. 440.) The Short-Doyle Act is contained within division 5 of the Welfare and Institutions Code. These annual appropriations are sufficiently broad as to be "available for Short-Doyle purposes" within the meaning of the instant judgment. As the Legislature has made "current appropriations available for the same purposes" as the Counties' claims (Gov. Code, § 16304.1), *Mandel* v. *Myers* is controlling and the trial court did not exceed its authority in ordering the Controller to issue warrants on existing appropriations, contingent on a finding by the Board that there are unexpended, unen-

cumbered funds in the appropriations sufficient to satisfy the claims. (*Mandel* v. *Myers, supra,* 29 Cal.3d at p. 542; Gov. Code, § 12440.)

■ At oral argument, the State advanced the recently enacted Government Code section 13332.15 as an additional reason to avoid payment of the Counties' claims. That statute provides: "No appropriation may be combined or used in any manner to avoid budgeting the salary or operating expenses of any position or to achieve any purpose which has been denied by any formal action of the Legislature." (Gov. Code, § 13332.15; added by Stats. 1983, ch. 323, § 44, p. —, urgency, eff. July 21, 1983.) The Counties concede the Legislature's deletion of their claim from the 1981 special appropriations bill constituted a formal action of denial by the Legislature. They urge, however, that the statute is inapplicable to the present appeal because it may not be construed to operate retroactively. We agree.

■ A retroactive statute is one which relates back to a previous transaction and gives that transaction a legal effect different from that which it had under the law when it occurred. (*Abrams* v. *Stone* (1957) 154 Cal.App.2d 33, 40-41 [315 P.2d 453].) ■ In the case before us, the contracts upon which the Counties' claims are based were executed in the years between 1971-1977. The underpayments were discovered in 1980, and the State, through the Department of Mental Health, conceded it owed the money in 1980-1981. As the Counties' contractual entitlement to the money arose at least in 1980-1981, if not before, application of a statute enacted in 1983 which purports to cut off that entitlement would clearly be retroactive. "Absent some clear policy requiring the contrary, statutes modifying liability in civil cases are not to be construed retroactively." (*Robinson* v. *Pediatric Affiliates Medical Group, Inc.* (1979) 98 Cal.App.3d 907, 912 [159 Cal.Rptr. 791].) This rule is merely a variant of the general presumption that legislative changes do not apply retroactively unless the Legislature expressly so declares. (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 371 [55 Cal.Rptr. 23, 420 P.2d 735].) ■ ■■■ We find no indication of legislative intent that Government Code section 13332.15 be applied retroactively.[5]

---

[5]Upon rehearing, the State urges that regardless of the retroactivity of Government Code section 13332.15, the same restriction contained in that section was stated in prohibitory terms in section 15 of every budget act from 1978 through 1982. (See Stats. 1978, ch. 359, § 15; Stats. 1979, ch. 259, § 15; Stats. 1980, ch. 510, § 15; Stats. 1981; ch. 99, § 15.00; Stats. 1982, ch. 326, § 15.00.) The State now contends these budgetary provisions preclude payment of the counties' claims.

While the State noted in a supplemental brief that Government Code section 13332.15 was derived from these budget provisions, no argument was made as to the effect of these annual prohibitions. The State relied entirely on Government Code section 13332.15 and the counties responded only to the code section. We therefore conclude the State is raising this argument for the first time on rehearing. It is a settled rule "that points made for the first time on petition for rehearing will not be considered." (*A. F. Estabrook Co.* v. *Industrial*

To the contrary, chapter 879 of the Statutes of 1983 presents a convincing indication that the Legislature specifically intended that Government Code section 13332.15 *not* be applied retroactively to defeat the Counties' claims for the State's share of Short-Doyle expenditures discovered by subsequent mental health audits. That statute, passed at the same legislative session during which Government Code section 13332.15 was enacted, provides: "SECTION 1. (a) The Legislature recognizes that claims resulting from state-mandated local costs relating to county mental health audit settlements under Chapter 1061 of the Statutes of 1973 which are approved by the State Board of Control are a legitimate debt of the state which shall be payable in future fiscal years. [¶] (b) It is the intent of the Legislature that the debts described in subdivision (a) be paid commencing with the 1984-85 Budget Act." Even were the legislative intent otherwise, we would be forced to conclude the specific legislative recognition of the Counties' entitlement to payment of the amounts due for mental health expenditures must override the more general statute precluding payment of claims the Legislature has once rejected. (Code Civ. Proc., § 1859; *Lacy* v. *Richmond Unified Sch. Dist.* (1975) 13 Cal.3d 469, 472 [119 Cal.Rptr. 1, 530 P.2d 1377].) Accordingly, we hold that Government Code section 13332.15 has no retroactive effect and is inapplicable to the present appeal. Our conclusion renders it unnecessary for us to address the impairment of contract issue raised by the Counties. (See Cal. Const., art. I, § 9.)

The judgment is modified to include within the phrase "any current appropriations" the Short-Doyle appropriations as contained within the 1982, 1983 and 1984 Budget Acts. As so modified, the judgment is affirmed.

Sparks, J., and Fields, J.,* concurred.

---

*Acc. Com.* (1918) 177 Cal. 767, 771 [177 P. 848]; *People* ex rel. *Dept. of Public Works* v. *Mascotti* (1962) 206 Cal.App.2d 772, 780 [23 Cal.Rptr. 846].) Even were we to reach the question, however, it would appear that budget restrictions in 1978 through 1982 can no more defeat contractual entitlements which arose in 1971 through 1977 than can a statute enacted in 1983.

*Assigned by the Chairperson of the Judicial Council.