91 Cal.Rptr.2d 135 (1999)
76 Cal.App.4th 1396
James L. McGILL, et al., Plaintiffs and Appellants,
v.
M.J. BROCK & SONS, INC., Defendant and Respondent.
No. E020452.
Court of Appeal, Fourth District, Division Two.
December 15, 1999.
As Modified on Denial of Rehearing January 13, 2000.
Review Denied March 22, 2000.[**]
*137 Wildish, Nialis & Bonetati, Daniel R. Wildish and Michael A. Reynolds, Orange, for Plaintiffs and Appellants.
Epstein & Turner, David B. Epstein, Los Angeles, and Michael R. Weiss, for Defendant and Respondent.
Certified for Partial Publication.[*]

*136 OPINION
McKINSTER, J.
The plaintiffs appeal from a summary judgment entered against them after the trial court determined that their action was barred by the statute of limitation. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND
The plaintiffs own houses in a residential subdivision known as Rolling Ridge which is adjacent to State Route 71 ("Highway 71") in Chino Hills. With one exception, the plaintiffs purchased their homes in 1987 from the builder, M.J. Brock & Sons, Inc. ("Brock"). Plaintiffs Ben and Kristen Romero purchased their home in 1990 from the initial buyer.
The plaintiffs sued a variety of defendants, including Brock, in 1994. As amended, the complaint asserted 13 counts against Brock, seeking damages and rescission on theories of intentional, negligent or innocent misrepresentation (counts 1-8 & 25), mutual or unilateral mistake (counts 9 & 10), failure of consideration (count 11), and breach of contract (count 12). In substance, the plaintiffs alleged that when the plaintiffs bought their houses from Brock, Brock had affirmatively represented that buyers would enjoy peace, tranquillity and a pleasant view, and *138 that Brock had failed to disclose to the plaintiffs the plan to realign Highway 71 and to expand it from a two-lane road to a six-lane freeway.
In 1996, Brock moved for summary judgment.[1] It argued that the plaintiffs' action was barred by the applicable statute of limitation, that it owed no duty of disclosure to some of the plaintiffs, and that the plaintiffs could not have reasonably relied upon any failure to disclose. The trial court granted the motion on the first ground, and issued a judgment in favor of Brock. The plaintiffs appeal.

ISSUES
The only issues on appeal are two of those raised in the motion for summary judgment: Did the plaintiffs justifiably rely on Brock's failure to disclose? Are the plaintiffs' claims barred by the statute of limitation?[2]

ANALYSIS

A. BROCK HAS FAILED TO DEMONSTRATE THAT THE PLAINTIFFS COULD NOT HAVE JUSTIFIABLY RELIED UPON ITS FAILURE TO DISCLOSE CALTRANS'S PLANS TO EXPAND HIGHWAY 71.[**]

B. BROCK'S MOTION FAILED TO DEMONSTRATE THAT THE PLAINTIFFS' CLAIMS WERE BARRED BY THE STATUTE OF LIMITATION.

Code of Civil Procedure section 338, subdivision (d), provides for a three-year limitation period for any action for relief on the ground of fraud or mistake. If misrepresentation or mistake is the basis for the injury, the action is governed by that section, regardless of the form of the action or the type of relief sought. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 596, p. 767.) Thus, counts 1 through 10 and 25 are all governed by the three-year statute. Although count 12 is styled as one for breach of contract, it too is governed by this statute because the alleged breach is Brock's failure to disclose information concerning the realignment and expansion of Highway 71. Similarly, count 11 is alleged as one for rescission of a contract for failure of consideration. Rescission is proper "[i]f the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds." (Civ.Code, § 1689, subd. (b)(2).) Brock's fault is alleged to be its misrepresentation. Therefore, count 11 is governed by Code of Civil Procedure section 338 as well.
*139 The three-year period does not begin to run as soon as the misrepresentation or mistake is made. Instead, the cause of action "is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (Code Civ. Proa, § 338, subd. (d).) But "`discovery' is not synonymous with actual knowledge." (People v. Zamora (1976) 18 Cal.3d 538, 561-562, 134 Cal.Rptr. 784, 557 P.2d 75.) "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." (Civ.Code, § 19.) Accordingly, when the defrauded person has actual notice or knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, the victim has a duty to investigate. (Hobart v. Hobart Estate Co. (1945) 26 Cal.2d 412, 437-438, 159 P.2d 958; Bedolla v. Logan & Frazer (1975) 52 Cal.App.3d 118, 130, 125 Cal.Rptr. 59.) If the investigation would have disclosed the fraud, the victim "`will be charged with a discovery as of the time the inquiry would have given him knowledge.'" (Vai v. Bank of America (1961) 56 Cal.2d 329, 343, 15 Cal.Rptr. 71, 364 P.2d 247, quoting Victor Oil Co. v. Drum (1920) 184 Cal. 226, 240, 193 P. 243.)
On the other hand, if the known circumstances would not put a reasonable person on inquiry, no duty to inquire exists. (Vai v. Bank of America, supra, 56 Cal.2d at p. 343, 15 Cal.Rptr. 71, 364 P.2d 247; Hobart v. Hobart Estate Co., supra, 26 Cal.2d at pp. 438-139, 159 P.2d 958.) In that event, "`the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery.'" (Vai p. 343,15 Cal.Rptr. 71, 364 P.2d 247; Hobart, p. 438, 159 P.2d 958; accord, id., p. 442, 159 P.2d 958; Parsons v. Tickner (1995) 31 Cal.App.4th 1513, 1528-1529, 37 Cal. Rptr.2d 810.)

1. The Facts Stated in Brock's Separate Statement of Undisputed Facts Do Not Establish that the Plaintiffs' Claims Are Barred by the Statute of Limitation.

In its motion for summary judgment, Brock sought to establish as a matter of undisputed fact that the plaintiffs knew or were deemed to have known of the existence of the alleged misrepresentation or mistake more than three years before their action was filed. To support that conclusion, Brock asserted in its separate statement (Code Civ. Proa, § 437c, subd. (b)) that the following facts were undisputed:
 All the plaintiffs except the Romeros purchased their lots during the period of January through August, 1987. The Romeros purchased their lot in November of 1990.
 Highway 71 between State Highway 91 and Interstate Highway 10 is near the Rolling Ridge tract in which the plaintiffs' lots are located.
 "On November 3, 1987 Bond Measure A, which was proposed to the voters of San Bernardino County to provide funds for the development of State Highway 71 between State Route 91 and Interstate 10, failed and did not pass."
 "On November 7, 1989 Bond Measure I, which was proposed to the voters of San Bernardino County to provide funds for the development of State Highway 71 between State Route 91 and Interstate 10, the development of which is the subject of this lawsuit, was passed and enacted into law."[3]

*140  The plaintiffs did not file their complaint until June 16, 1994.
The plaintiffs did not dispute the truth of those facts, although they denied knowledge of the bond issues or of the planned expansion of Highway 71. The issue, therefore, is whether those few facts demonstrate that the plaintiffs were on inquiry notice of the planned expansion of Highway 71.
The trial court held that they do: "As a matter of law, the plaintiffs are deemed to have had constructive knowledge of the widening of Highway 71 as of the passage of Bond Measure I by the voters of San Bernardino County on November 7, 1989, placing them at least on inquiry notice. With the passage of Bond Measure I and its attendant publicity, the reality that Highway 71 would be expanded into a freeway became a matter of public record and public knowledge sufficient to put a reasonable person in plaintiffs' community on constructive notice of such facts, as a matter of law." It is mistaken.
To support its conclusion that the plaintiffs had constructive notice of those matters of public record, the trial court relied upon cases stating that "`when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute commences to run.'" (Baker v. Beech Aircraft Corp. (1979) 96 Cal.App.3d 321, 327-328, 157 Cal. Rptr. 779, quoting what is now 3 Witkin, Cal. Procedure, supra, § 602, p. 773; accord, Lee v. Escrow Consultants, Inc. (1989) 210 Cal.App.3d 915, 920, 259 Cal. Rptr. 117; Community Cause v. Boatwright (1981) 124 Cal.App.3d 888, 902, 177 Cal.Rptr. 657; emphasis added.)
That reliance is misplaced, because those authorities err by stating the rule in the disjunctive. The existence of the means to obtain information, such as through public records, is equivalent to actual knowledge of that information "only where there is a duty to inquire, as where plaintiff is aware of facts which would make a reasonably prudent person suspicious." (Hobart v. Hobart Estate Co., supra, 26 Cal.2d at p. 438, 159 P.2d 958.) In the absence of notice or knowledge of those suspicious circumstancesand of the duty to inquire that results from that notice or knowledgethe statute does not run merely because the means of discovery were available.[4](Id., p. 442, 159 P.2d 958; Vai v. Bank of America, supra, 56 Cal.2d at p. 343, 15 Cal.Rptr. 71, 364 P.2d 247; Eisenbaum v. Western Energy Resources, Inc. (1990) 218 Cal.App.3d 314, 325; 267 Cal.Rptr. 53 Witkin, supra, § 605, p. 778.) In short, regardless of the contents of public records, the statutory period does not begin to run until the plaintiffs either have actual knowledge of suspicious circumstances creating a duty of inquiry, or *141 at least receive actual notice of those circumstances.[5]
In its separate statement, Brock neither contended nor cited to any evidence that the plaintiffs had actual knowledge of the existence or passage of the bond measure. Nor did Brock cite to any evidence that the plaintiffs received notice of those facts. For instance, it did not contend or cite to any evidence that the plaintiffs were registered voters who would have received a sample ballot, voters' pamphlet, or other official notice of the election at which the bond measure was decided.
Thus, the existence of Measure I and its approval by the electorate do not, by themselves, commence the running of the limitation period. In the absence of evidence that the plaintiffs either knew or had received notice of the bond measure or its passage, those facts do not create a duty of inquiry. Accordingly, the facts listed in Brock's separate statement of undisputed facts do not establish that the statute of limitation had run on the plaintiffs' claims.

2. Newspaper Articles Did Not Put the Plaintiffs on Inquiry Notice.

Brock would have us uphold the summary judgment on the basis of factual contentions which are not set forth in its separate statement. In particular, Brock contends that the plan to expand Highway 71 and the passage of the bond measure were reported in various newspapers in 1989, that the plaintiffs should be deemed to have received notice of the expansion project from those reports, and that the limitation period began to run at the time of those articles. We reject that analysis for several alternative reasons.
First, Code of Civil Procedure section 437c requires the moving and opposing parties to prepare separate statements of undisputed facts, setting forth all the facts that the respective parties consider to be material. (Id., subd. (b).) The purpose of the separate statements is twofold: to afford due process to the opposing party by informing it of the evidence which must be disputed in order to defeat the motion, and to aid both trial and appellate courts in reviewing summary judgment motions by allowing them to determine quickly and efficiently whether material facts are disputed. (North Coast Business Park v. Nielsen Construction Co. (1993) 17 Cal.App.4th 22, 30, 21 Cal.Rptr.2d 104; United Community Church v. Garcin (1991) 231 Cal.App.3d 327, 335, 337, 282 Cal.Rptr. 368.) To promote both of those goals, we consider only those facts that are listed in the parties' separate statements. A fact omitted from the separate statements "`does not exist'" (United Community Church, p. 337, 282 Cal.Rptr. 368 [reversing summary judgment]), even if its existence is supported by evidence filed with the court (North Coast Business Park, pp. 30-31, 21 Cal.Rptr.2d 104).
Here, although Brock asked the trial court to take judicial notice of several newspaper articles, the publication of those articles is not listed as undisputed in its separate statement, nor are any of those articles cited as evidence supporting any *142 other fact listed as being undisputed. Accordingly, those articles are not among the facts that are considered in evaluating the ruling on the motion.
Second, even were we to overlook the omission of any mention of the newspaper articles from Brock's statement of undisputed facts, the articles cannot be considered unless we may properly grant Brock's request that we take judicial notice of them. It is unclear whether the facts that particular newspapers published articles on particular subjects on particular dates are either "of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute" (Evid.Code, § 452, subd. (g)) or "are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy" (id., subd. (h)). (Compare People v. Massie (1998) 19 Cal.4th 550, 566, fn. 4, 79 Cal.Rptr.2d 816, 967 P.2d 29 [refusing to take judicial notice of newspaper articles] and People v. Ramos (1997) 15 Cal.4th 1133, 1167, 64 Cal.Rptr.2d 892, 938 P.2d 950 [affirming refusal to take judicial notice] with Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 408, 87 Cal.Rptr.2d 453 [taking judicial notice that a "controversy" had arisen in the popular press, without specifying the media involved], People v. Hardy (1992) 2 Cal.4th 86, 174, fn. 24, 5 Cal. Rptr.2d 796, 825 P.2d 781 [taking judicial notice of newspaper articles], and People v. Jurado (1981) 115 Cal.App.3d 170, 482, 171 Cal.Rptr.2d 509 [same].)
We need not resolve those conflicting decisions because even if we were to take judicial notice of the newspaper articles, there is no evidence that any of the plaintiffs read any of those articles or even received any of those newspapers. For instance, Brock offers no evidence that any of the plaintiffs have ever subscribed to any of those newspapers. Therefore, there is no evidence that the plaintiffs had notice of circumstances sufficient to give rise to a duty to investigate unless we accept Brock's contention that the plaintiffs' actual knowledge is irrelevant because after the passage of Measure I was reported in the news media, the plaintiffs may be deemed to have known facts sufficient to put them on inquiry notice.
Brock cites no California cases for that proposition. Instead, it relies upon Stutz Motor Car of America v. Reebok Intern., Ltd. (C.D.Cal.1995) 909 F.Supp. 1353, which in turn relies upon United Klans of America v. McGovern (5th Cir.1980) 621 F.2d 152. Both of those cases state that knowledge of an event may be imputed to a plaintiff, thereby commencing the running of a limitation period, if media reports of that event have been sufficiently widespread. (United Klans of America, p. 154; Stutz Motor Car of America, p. 1362.)
On matters of state law, federal court decisions not binding, although well-considered opinions may be persuasive. (9 Witkin, Cal. Procedure, supra, Appeal, § 943, pp. 984-985.) We are not persuaded by either United Klans of America v. McGovern or Stutz Motor Car of America v. Reebok Intern., Ltd., for three reasons. First, in both cases the discussion of knowledge of suspicious circumstances being imputed to a plaintiff by media reports was unnecessary dictum, because the plaintiffs were found to have had actual knowledge. (United Klans of America, 621 F.2d at p. 155; Stutz Motor Car of America, 909 F.Supp. at p. 1362.) Second, the rule stated in those cases is contrary to California statutory law, which provides that a person's duty of inquiry arises only from facts of which that person has "actual notice." (Civ.Code, § 19.) And third, even were the proposed rule not contradicted by statute, we question the wisdom or the justice promoted by a rule that allows the statute of limitation on a fraud claim to run, and thereby forecloses a plaintiff from having a trial on the merits of his or her claim, before the plaintiff has actual notice of facts creating a reasonable suspicion that he or she has been defrauded. That would be contrary to the purpose of the delayed-discovery rule, which is to protect those who are ignorant of their cause of action through no fault of their own. (April Enterprises, Inc. v. *143 KTTV (1983) 147 Cal.App.3d 805, 832, 195 Cal.Rptr. 421.) Real-life plaintiffs are motivated to file suit only by facts of which they have actual knowledge, not by facts as to which they have only constructive or imputed knowledge. Were we to stack the legal fiction of "imputed knowledge" upon that of "constructive knowledge," and thereby allow the duty to inquire to be triggered by facts of which a plaintiff has only imputed knowledge, we would run the risk of barring legitimate claims by deserving victims of actual fraud. For all of those reasons, we decline to follow either United Klans of America or Stutz Motor Car of America.
Finally, even if we were to follow those cases, the evidence offered by Brock fails to demonstrate that media coverage of the existence of the planned expansion of Highway 71 and of the passage of the bond measure funding that expansion was so widespread that every reasonable person in the plaintiffs' position would have seen those news reports. For instance, Brock offers no evidence that any news reports on this issue appeared in any news medium other than the newspapers. Given the ever-decreasing percentage of the populace which relies on the print media for its news coverage, as opposed to television, radio, and other electronic media, we question whether "any reasonable person" in today's world would necessarily have seen these newspaper articles.
Besides, of the nine newspaper articles offered by Brock, four of them refer solely to the bond measure, without mentioning the Highway 71 project at all. A fifth article, after discussing the passage of the bond measure, makes a single reference to the Highway 71 project in its fifteenth paragraph. Two other "articles" are legal notices published by Caltrans soliciting public comments on the final environmental impact statement prepared for the Highway 71 project. Only two of the nine articles are actual news reports concerning the plans to expand Highway 71, one of which appeared in the Chino Champion and the other in the Chino Valley News.
Given that only two news reports concerning the expansion of Highway 71 appeared in only two small newspapers, we cannot say that the news media reporting of that project was so pervasive that any reasonable person would have been aware of that project and would have been under a duty to investigate the potential impact of that project on that person's property.
For all of these reasons, Brock's motion failed to establish that the plaintiffs' claims are barred by the statute of limitation.

DISPOSITION
The judgment is reversed. The plaintiffs shall recover their costs on appeal.
RAMIREZ, P.J., and GAUT, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part A.
[**] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] Actually, Brock moved for summary adjudication, because the plaintiffs had also alleged other causes of action against it on a construction-defect theory. But because those other causes of action have since been voluntarily dismissed, we treat the motion as one for summary judgment.
[2] The parties also argue whether Brock, who was not the original subdivider, is bound by the duties of disclosure statutorily imposed upon sellers of subdivided lands. (Bus. & Prof.Code, § 11000, et seq.) But Brock has not sought to defend its judgment on the ground that it did not owe any duty of disclosure to the plaintiffs. In the absence of any argument that no duty of disclosure existed at all, we need not decide whether a particular statutory duty existed.

In its petition for rehearing, Brock argues that the plaintiffs' complaint is deficient because it does not adequately allege that the plaintiffs were unaware of facts that would have given rise to a duty of inquiry. We do not consider that issue because the alleged insufficiency of the plaintiffs' complaint was not raised in Brock's brief. "[P]oints made for the first time on petition for rehearing will not be considered." (A.F. Estabrook Co. v. Industrial Acc. Com. (1918) 177 Cal. 767, 771, 177 P. 848; Bank of America v. Superior Court (1990) 220 Cal.App.3d 613, 626, fn. 6, 269 Cal.Rptr. 596;, County of Sacramento v. Loeb (1984) 160 Cal.App.3d 446, 459-460, fn. 5, 206 Cal.Rptr. 626.) Our resolution of the points that were timely raised is without prejudice to Brock raising that new issue in the trial court by a motion for judgment on the pleadings.
[**] See footnote *, ante.
[3] Brock's suggestion that the sole purpose of the bond measures was to fund the expansion of Highway 71 is incorrect. Measure I imposed a county-wide one-half-of-one-percent sales tax to fund a variety of capital improvements by the San Bernardino County Transportation Authority. The anticipated projects included not only improvements to freeways, but also local and arterial streets and a commuter rail program. In addition to the project to expand Highway 71, the freeway projects included widening segments of Interstates 10 and 215 and of Highway 60, and extending the Highway 30 freeway. Given the broad scope of the projects to be funded by the measure, a reference to the bond measure cannot reasonably be equated with a reference to the project to convert Highway 71 into a freeway.
[4] After stating this limitation, the court in Hobart v. Hobart Estate Co., supra, 26 Cal.2d at pages 438 and 439, 159 P.2d 958 goes on to quote Lady Washington C. Co. v. Wood (1896) 113 Cal. 482, at page 487, 45 P. 809, for the proposition that the means of acquiring knowledge of particular facts is also equivalent to actual knowledge of those facts "`when the facts were presumptively within [the plaintiff's] knowledge....'" Neither Lady Washington C. Co. nor the cases that it cites in support of that rule explain when such knowledge will be presumed. But Hobart equates that presumptive knowledge with the knowledge which Civil Code section 2332 imputes to a principal when facts are actually known to the principal's agent: "It follows that plaintiff is not barred because the means of discovery were available at an earlier date provided he has shown that he was not put on inquiry by any circumstances known to him or his agents at any time prior to the commencement of the three-year period ending" with the filing of the complaint. (Hobart, p. 439, 159 P.2d 958; accord, Sun `N Sand, Inc. v. United California Bank (1978) 21 Cal.3d 671, 702, 148 Cal.Rptr. 329, 582 P.2d 920 [employer has presumptive knowledge of facts known to its honest agent].) Here, the plaintiffs have not been shown to have presumptive knowledge. In particular, there is no claim or evidence that there were any agents of the plaintiffs who had knowledge of facts of which the plaintiffs would be presumptively aware.
[5] For the same reasons, we decline to follow the case raised by Brock in its petition for rehearing. McKelvey v. Boeing North American, Inc. (1999) 74 Cal.App.4th 151, 86 Cal. Rptr.2d 645, to the extent that it may stand for the proposition that the means of obtaining actual knowledge is always equivalent to actual knowledge.

The amici supporting Brock's petition for rehearing note that the Supreme Court has applied an arguably different delayed-discovery rule in other contexts. (Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103, 1109, 245 Cal. Rptr. 658, 751 P.2d 923 [common law exception to Code Civ. Proa, § 340, subd. (3), regarding claims for personal injuries]; Sanchez v. South Hoover Hospital (1976) 18 Cal.3d 93, 101, 132 Cal.Rptr. 657, 553 P.2d 1129 [statutory discovery rule in Code Civ. Proa, § 340.5, governing claims for medical malpractice].) But those cases neither deal with the statutory discovery rule at issue here (Code Civ. Proa, § 338, subd. (d)) nor criticize the holdings of the Supreme Court cases that do (Vai v. Bank of America, supra, 56 Cal.2d 329, 15 Cal.Rptr. 71, 364 P.2d 247; Hobart v. Hobart Estate Co., supra, 26 Cal.2d 412, 159 P.2d 958). Unless and until Vai and Hobart are overruled, we must follow them.