[No. A128697. First Dist., Div. Five. May 10, 2011.]

ALAMEDA COUNTY MANAGEMENT EMPLOYEES ASSOCIATION et al., Plaintiffs and Appellants, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Defendant and Respondent.

[CERTIFIED FOR PARTIAL PUBLICATION†]

†Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III. and IV.B.

326

COUNSEL

Leonard Carder and Arthur A. Krantz for Plaintiffs and Appellants.

Atkinson, Andelson, Loya, Ruud & Romo, Paul M. Loya, Elizabeth P. Lind; Wiley Price & Radulovich and Joseph E. Wiley for Defendant and Respondent.

OPINION

**NEEDHAM, J.**—Facing a multimillion-dollar budget reduction for the 2009–2010 fiscal year, the Superior Court of Alameda County (the Court) implemented a reduction in force. Among those laid off were a number of members of appellant Alameda County Management Employees Association (ACMEA), a labor organization representing certain Court employees in managerial classifications. After being notified of the impending action, a number of ACMEA members selected for layoff invoked the seniority provisions of the Court's personnel policies and requested demotions or transfers to lower paying classifications in which they had previously held tenure. Although these employees' seniority would have entitled them to demotions under the Court's personnel policies, in all but two instances, the Court denied their requests, citing the definition of seniority contained in a memorandum of understanding (MOU) it had negotiated with another union. The Court determined that the seniority definition contained in the MOU applied to ACMEA's members and that under that definition, they could not exercise the demotion rights they would otherwise have enjoyed under the Court's personnel policies. In addition, the laid-off ACMEA members requested due process hearings in front of a hearing officer, believing that their layoffs were disciplinary in character. The Court denied those requests also.

ACMEA and the employees later filed a petition for writ of mandate, alleging that the Court had violated the provisions of the Trial Court Employment Protection and Governance Act (Act; Gov. Code, § 71600 et seq.)[1] by failing to meet and confer with ACMEA before changing the

---

[1] All statutory references are to the Government Code.

seniority and demotion rights of its members. They also claimed the Court had violated its own policies and rules by refusing to grant the requests to demote in lieu of layoff. Finally, they alleged the Court had violated their due process rights under the federal and California Constitutions by failing to accord them due process hearings. The petition was heard under the special provisions of the Act, and after hearing, the trial judge denied the petition.[2]

ACMEA now appeals from that adverse judgment. We agree with ACMEA that the Court's actions violated the Act and the Court's own policies and rules. We disagree that the Court denied the laid-off employees due process. Accordingly, we will reverse in part, affirm in part, and remand for further proceedings.

### THE STATUTORY BACKGROUND

ACMEA contends the Court violated the provisions of the Act by changing its members' seniority rights without first meeting and conferring with their union. (See § 71634.2, subd. (a).) To our knowledge, only one other California appellate court has construed the Act. (*OCEA, supra,* 120 Cal.App.4th 287.) We will therefore briefly review its origins and the relevant provisions of the Act before turning to the merits of the case before us.

### *Origins of the Act*

The Trial Court Funding and Improvement Act of 1997 established a Task Force on Trial Court Employees (the Task Force) "charged with recommending an appropriate system of employment and governance for trial court employees." (See Stats. 1997, ch. 850, § 48, p. 6009, codified at § 77600 et seq.) The Legislature's stated goal was "to adopt a plan to transition all existing court employees into an appropriate employment status" by January 1, 2001. (Stats. 1997, ch. 850, § 3(g)(2), pp. 5969, 5970.) It also wished to

---

[2] Generally, an employee organization's claim that a trial court has violated the Act would initially be heard by the Public Employment Relations Board (PERB). (§ 71639.1, subds. (b), (c).) But under the Act disputes involving management employees, such as those represented by ACMEA, are excluded from PERB's jurisdiction. (§ 71639.1, subd. (e); see § 71637.1 [authorizing trial courts to adopt reasonable rules providing for the designation of management and confidential employees].) Therefore, pursuant to section 71639.5, subdivision (c) and California Rules of Court, rule 10.660(c)(2), the matter was assigned for hearing to the Honorable Robert M. Mallano, Presiding Justice of Division One of the Second Appellate District. (Cal. Rules of Court, rule 10.660(b)(3) ["The judge assigned to hear the petition in the superior court must be a justice from a Court of Appeal for a district other than the district for that superior court."]; *Orange County Employees Assn., Inc. v. Superior Court* (2004) 120 Cal.App.4th 287, 296 [15 Cal.Rptr.3d 201] (*OCEA*) [petitions must be heard by an "out-of-district appellate justice"].) Thus, when we refer to the "trial judge" in this opinion, we mean the justice assigned to hear this matter under the special procedures prescribed by the Act and California Rules of Court, rule 10.660. (See Cal. Rules of Court, rule 10.660(b)(2), (c)(2).) To avoid unnecessary confusion, we will not refer to the court below as the "trial court."

consider "a mechanism for involvement of the local judiciary in the negotiations regarding compensation of court employees." (Stats. 1997, ch. 850, § 3(g)(3), pp. 5969, 5970.)

The Legislature directed the Task Force to study a number of components of personnel policy, including such issues as employment status, classification, and salary; retirement and other benefits; and bargaining procedures and agreements. (§ 77603, subds. (a)–(e).) In addition, the Task Force was directed to examine and outline issues for establishing a local personnel structure for trial court employees and then to recommend such a structure. (§ 77603, subds. (g), (i).) The Legislature's intent was to enact a personnel system for trial court employees that would have "uniform statewide applicability and promote organizational and operational flexibility . . . ." (§ 77605, subd. (a).)

In its final report, the Task Force made recommendations regarding the components of a personnel system for trial court employees. (See Task Force on Trial Court Employees (Dec. 31, 1999) Final Rep., pp. 63–201 (Final Report).) Relevant here is the Task Force's recommendation for a meet and confer model under which representatives of the trial courts and representatives of recognized employee organizations "shall meet and confer and be authorized to reach tentative agreement regarding all subjects within the scope of representation on behalf of their respective principals." (*Id.* at ¶ VI, p. 84.) The Task Force recommended meet-and-confer provisions for the new Act based on the language of the Meyers-Milias-Brown Act (MMBA; §§ 3500–3511). (Final Rep., at ¶ II, p. 84.)

The Legislature responded to the Task Force recommendations with Senate Bill No. 2140 (1999–2000 Reg. Sess.). (See *id.*, § 14.) Senate Bill No. 2140 embraced the recommendations by adopting "a mechanism for setting the terms and conditions of trial court employment, incorporating various provisions of the [MMBA]; [and by] provid[ing] that recognized employee organizations and court representatives shall utilize the 'meet and confer' process . . . ." (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 2140 (1999–2000 Reg. Sess.) as amended Aug. 25, 2000, p. 1; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 2140 (1999–2000 Reg. Sess.) as amended Apr. 5, 2000, p. 1.) The Act was signed into law on September 29, 2000. (§ 71600 et seq.; Stats. 2000, ch. 1010, § 14, p. 7356.)

*Labor Relations Under the Act*

The provisions of the Act governing labor relations are found in title 8, chapter 7, article 3 of the Government Code. One purpose of the statute is "to promote full communication between trial courts and their employees by

providing a reasonable method for resolving disputes regarding wages, hours, and other terms and conditions of employment between trial courts and recognized employee organizations."[3] (§ 71630, subd. (a).) Another stated purpose of this article is "to extend to trial court employees the right, and to require trial courts, to meet and confer in good faith over matters within the scope of representation, consistent with the procedures set forth in this article." (*Ibid.*)

The Act therefore guarantees trial court employees "the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations." (§ 71631.) Recognized employee organizations, in turn, are empowered to represent their members in employment relations with trial courts as to the matters covered by the Act. (§ 71633.) Under the Act, the scope of representation includes "all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment." (§ 71634, subd. (a).)

Trial courts are therefore required to meet and confer in good faith with representatives of recognized employee organizations regarding matters within the scope of representation. (§ 71634.2, subd. (a).) The Act mandates that trial courts "consider fully the presentations as are made by the recognized employee organization on behalf of its members prior to arriving at a determination of policy or course of action." (*Ibid.*) If the trial court and the employee organization reach agreement, they must prepare a written MOU and present it to the trial court for determination. (§ 71634.3.) If the trial court adopts the MOU, the written agreement becomes "binding upon the parties." (§ 71639.5, subd. (a).)

### *Transitional Provisions*

Unless expressly provided by the statute, the enactment of the Act did not itself require "modification or elimination of any existing . . . terms and conditions of employment of trial court employees." (§ 71612.) Save for minimum standards prescribed by the Act, however, the statute permits the elimination or modification of preexisting terms and conditions of employment "through the meet and confer in good faith process." (*Ibid.*) In establishing local personnel structures for their employees, trial courts are required to give consideration to "protecting the rights accrued by trial court employees under their current systems," but the Act permits reconsideration

---

[3] The Act defines a "recognized employee organization" as "an employee organization that has been formally acknowledged to represent trial court employees . . . by the trial court . . . ." (§ 71601, subd. (h).)

of prior contractual obligations and rights, again subject to obligation to meet and confer in good faith. (§ 71615, subd. (d).)

## FACTUAL AND PROCEDURAL HISTORY

The facts of this case are undisputed. In the court below, the parties filed joint stipulations regarding the facts and the procedures governing the conduct of the litigation. The parties specifically agreed their stipulations "contain[ed] all material facts upon which the parties . . . intend to rely in the merits phase of this litigation." We therefore take our factual statement from these stipulations and their attached exhibits.

### The Parties

ACMEA is a labor organization and is the certified bargaining representative of various Court employees holding certain managerial, supervisory, and administrative positions. The employee classifications represented by ACMEA are listed in appendix A to the most recent MOU between ACMEA and the Court. The Court has recognized ACMEA as the exclusive bargaining representative of employees in those classifications. ACMEA qualifies as an "employee organization" within the meaning of section 71601, subdivision (b).

Petitioners Bridget Conner, Donna Fabian, Linda Fisher, Sylvia Gee, Dena Gomez, Danith Kincaid, Alina Mateo, Denise Martinez, Rosalina Neeley, Nikki Riley, Carla Schengel, Alisa Taylor, and Deborah Williams (collectively, the Individual Petitioners) are individuals who were at all relevant times employees of the Court. The Individual Petitioners are "trial court employees" within the meaning of section 71601, subdivision (l) and were members of the bargaining unit represented by ACMEA.

The Court is a superior court of the State of California and is a "trial court" within the meaning of section 71601, subdivision (k).

### Relevant Personnel Policies and Agreements

Effective November 15, 2001, the Court promulgated a set of personnel organization policies and rules (the Personnel Policies) after meeting, conferring, and reaching agreement on the content of these policies and rules with ACMEA and other labor organizations representing Court employees. The Court later amended and repromulgated the Personnel Policies effective

March 14, 2003, April 12, 2006, and again in May of 2008.[4] Since May 2008, the Court has not promulgated any amendments to, or new versions of, its Personnel Policies. The Personnel Policies contain a preface that states in relevant part: "The policies and rules contained in this manual apply to employees in represented and unrepresented court classifications . . . . [¶] . . . [¶] Where these policies and rules conflict with provisions of a memorandum of understanding between the Court and a recognized employee organization, the MOU provisions will govern as to employees occupying positions in classifications covered by the MOU."

In accordance with section 7.1 of the Personnel Policies, the Court promulgated a "Layoff Policy" that became effective May 14, 2003. The Layoff Policy has not been amended or repromulgated since that time, and no other layoff instructions have been issued. Section X of the Layoff Policy is entitled "Layoff Options & Displacement ('Bumping') Rights."[5] It provides that "[i]n the event of a layoff, an employee in a classification affected by a reduction in force shall have the following options: [¶] • Elect to demote to a lower paying class, **if** the employee previously held tenure in the lower paying class . . . ." This language is similar to section 7.1.2 of the Personnel Policies, under which "[a]n employee in a classification affected by a reduction in force may, in lieu of layoff, elect to demote to a lower paying classification, provided that such employee held tenure in the lower paying classification."

ACMEA and the Court negotiated an MOU in 2008. This MOU is effective between January 1, 2009, and December 31, 2011.

The Service Employees International Union, Local 1021 (SEIU) represents Court employees holding jobs in the classifications of administrative services clerk, fiscal assistant, trial court financial hearing officer, legal processing assistant, and courtroom clerk. The Court and SEIU have negotiated an MOU regarding conditions of employment that is effective from January 1, 2009, through December 31, 2011 (the SEIU MOU). The Court and SEIU entered into the SEIU MOU without providing any notice to ACMEA and without providing ACMEA the opportunity to meet and confer over any part of the agreement's contents.

---

[4] The parties dispute whether the Court provided ACMEA with notice and the opportunity to meet and confer regarding the content of the Personnel Policies after March 14, 2003. Nevertheless, for the purposes of this litigation only, ACMEA is willing to treat the May 2008 version of the Personnel Policies as valid and properly promulgated.

[5] In labor law, "bumping" rights generally refer to the right of an employee with more seniority to take the position of an employee with less seniority. (*Daniels v. Shasta-Tehama-Trinity J. Community College Dist.* (1989) 212 Cal.App.3d 909, 925 [260 Cal.Rptr. 867].)

The SEIU MOU includes new language that had not been in any prior MOU. Section 30, entitled "Seniority," states: "Seniority Defined: Except for layoff and recall which utilize classification seniority, seniority shall be measured by hours worked (paid status) using the total service for the Court or the Court and Alameda County if the employee has worked in a classification assigned to the Court prior to January 1, 2001." Section 30.C.4 also includes new language providing that "Seniority shall be terminated by: [¶] . . . [¶] . . . Failure beyond six (6) months to return from a non bargaining unit position."

### The June 2009 Layoffs

For the 2009–2010 year, the Court experienced a reduction in budget of approximately $5,944,151. Effective June 26, 2009, the Court implemented a significant reduction in force. It laid off 72 employees, including 37 employees in the SEIU bargaining unit and 28 in the ACMEA bargaining unit, as well as seven unrepresented employees. The individuals selected for layoff from ACMEA positions, including the Individual Petitioners, were those with the least courtwide seniority in the classifications selected for layoff, as provided in Section 7.1 of the Court's Personnel Policies.

The Court issued layoff notices to all of the Individual Petitioners. As required by section 10 of the ACMEA MOU, both ACMEA and the Individual Petitioners received sufficient advance notice of the layoffs. Each Individual Petitioner advised of her impending layoff was informed that, "[i]f you think that the Court has incorrectly determined to layoff your position, you may within three (3) working days from receipt of this notice, submit an explanation in writing to the Assistant Executive Officer . . . ." None of the Individual Petitioners made any substantive challenge to the accuracy of the Court's calculations regarding the number of years of courtwide seniority they held.

But for any effect of the SEIU MOU—which the parties to this appeal dispute—Individual Petitioners Gomez, Kincaid, Martinez, Mateo, Neeley, Riley, Schengel, Taylor, and Williams would have been entitled, under the terms of the Court's Personnel Policies, to transfers or demotions to classifications in which they had previously held tenure in the SEIU bargaining unit, to the extent that those positions are currently filled by less senior employees. The aforementioned employees notified the Court that they wished to transfer or demote to classifications in the SEIU bargaining unit in which they had previously held tenure. The Court did not demote these employees as they requested, on the grounds that they had been out of the SEIU bargaining unit for more than six months, and instead laid them off. The Court maintains that these employees do not have the right to be placed on a reemployment list for

classifications in which they previously held tenure within the SEIU bargaining unit, because, as of the date of their layoffs, they had been out of the SEIU bargaining unit for more than six months.

### Reclassification of the "Secretary II" Position

At the time of court consolidation,[6] a classification consultant was retained to conduct a job audit of all Court employees who held the "Secretary II" classification. Based on the results of this audit, each individual who held the Secretary II position was reclassified into one of three possible classifications, depending upon the specific job duties that he or she was actually performing at the time. Those three classifications were (1) "Division Assistant," (2) "Division Secretary, Confidential," and (3) "Senior Division Secretary, Confidential." All of these titles have been within the bargaining unit represented by ACMEA and have never been within the bargaining unit represented by SEIU.

As a result of this reclassification process, Fabian's title changed from Secretary II to Division Assistant, without any material change in the job functions she was performing. Fabian continued to hold the position of Division Assistant at the time of the 2009 layoffs. In lieu of layoff, Fabian requested to demote or transfer to the classification of Division Secretary, Confidential. The Court denied the request and did not demote Fabian, stating that she had never held tenure in the Division Secretary, Confidential classification, nor had she ever performed the essential duties of that classification. Fabian was instead laid off.

### Requests for Due Process Hearings

Conner, Fabian, Gomez, Kincaid, Martinez, Mateo, Neeley, Riley, Schengel, Taylor, and Williams requested that the Court provide them due process hearings in front of a hearing officer, on the ground that they claimed they had reason to believe their impending layoffs were, in truth, disciplinary in character.

The Court allowed Fisher and Gee to elect to demote in lieu of layoff. Both Fisher and Gee demoted from the classification of "Fiscal Services Supervisor" to the classification of "Accounting Technician." The classification of Accounting Technician is not in any union-represented bargaining unit. Fisher

---

[6] The parties use the term "court consolidation" to refer to the unification of the municipal and superior courts within each county following the voters' adoption of Proposition 220 on June 2, 1998. (See *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 763, fn. 2 [98 Cal.Rptr.2d 1, 3 P.3d 286]; 2 Witkin, Cal. Procedure (5th ed. 2008) Courts, § 166, p. 238.)

and Gee earn less money in their new positions than they did in the positions from which they were laid off. Fisher and Gee also requested that the Court accord them due process hearings in front of a hearing officer, on the ground that they had reason to believe their demotions were, in truth, disciplinary in character.

In their requests for due process hearings, none of the petitioners presented any specific facts or evidence in support of their beliefs that their layoffs or demotions were disciplinary in nature. Had such a hearing been granted, however, each Individual Petitioner was prepared to present such evidence at the due process hearing.

The Court contends that this was a layoff based on the organizational necessity of the Court and that the actions taken against the Individual Petitioners were not disciplinary in nature. Therefore, the Court contends that the Individual Petitioners had no right to due process hearings. For this reason, the Court did not provide due process hearings to the Individual Petitioners.

*Proceedings Below*

On July 23, 2009, ACMEA and the Individual Petitioners filed a petition for writ of mandate and complaint seeking damages and declaratory and injunctive relief (the Petition) in Alameda County Superior Court.[7] The Petition alleged the Court had violated both its Personnel Policies and the Act when it denied the Individual Petitioners' requests to demote to other classifications in lieu of layoff. It also alleged the Court had violated the Individual Petitioners' due process rights under both the state and federal Constitutions by failing to provide evidentiary due process hearings before a neutral hearing officer.

The litigation was bifurcated into a merits phase and a remedial phase. With the approval of the trial judge, the parties filed cross-briefs on the merits. The trial judge issued a draft tentative decision after the merits phase of the case, and after oral argument, issued a tentative decision. On January 12, 2010, the trial judge issued a proposed statement of decision, to which ACMEA filed objections.

The trial judge issued a statement of decision on February 3, 2010. He rejected all of ACMEA's objections to the statement of decision and denied all of the Individual Petitioners' claims save Conner's. Thereafter, the parties were able to work out a remedy for Conner without the trial judge's

---

[7] See footnote 2, *ante.*

involvement.[8] They notified the trial judge that they had settled all aspects of the remedial phase of the litigation and requested that the trial judge issue judgment. ACMEA and the Individual Petitioners reserved the right to appeal the trial judge's decision on the merits.

Judgment was entered on the merits phase of the case on April 12, 2010. ACMEA and the Individual Petitioners then filed a timely appeal.

*Proceedings in This Court*

This appeal was argued and submitted on February 17, 2011. On March 7, 2011, we filed our initial opinion. We held the Court had violated the Act by refusing to permit nine of the Individual Petitioners to demote in lieu of layoff. We agreed with ACMEA that because the Individual Petitioners' seniority and bumping rights derived from the Personnel Policies, and the Personnel Policies predated the implementation date of the Act, the statute's transitional provisions required the Court to meet and confer with ACMEA before making any changes to the rights conferred by those policies. (See §§ 71615, subd. (d), 71639, subd. (b).) We based that holding on ACMEA's uncontested contention that the Act became effective January 1, 2004.

After we issued our opinion, the Court obtained new counsel, who filed a petition for rehearing. In the petition, the Court asserted that the Act's implementation date was in fact January 1, 2001. It therefore contended there had been no violation of sections 71615, subdivision (d) and 71639, subdivision (b), because the seniority and bumping rights at issue did not predate the implementation of the Act. The Court requested that we correct the mistake of law regarding the Act's implementation date, but it did not argue that correction of the mistake should result in affirmance of the judgment below.[9]

---

[8] As a result, Conner's claims regarding her right to demote are not at issue in this appeal.

[9] We are frankly astonished that counsel first raised this issue on rehearing. We recognize that the Court obtained new counsel after we filed our initial opinion, but that does not excuse the failure to raise this argument in a timely fashion. (See *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 765–766 [60 Cal.Rptr.2d 770] [retention of new counsel no excuse for seeking to raise new issue in reply brief].) ACMEA contended below and in its briefs in this court that the Act became effective on January 1, 2004. Indeed, the Court's petition for rehearing characterizes this contention as "critical to the arguments [ACMEA] made to this Court." But the Court did not dispute this allegedly critical contention "in the trial court, [or] in this court at any time prior to filing [its] petition for rehearing." (*Exarhos v. Exarhos* (2008) 159 Cal.App.4th 898, 907 [72 Cal.Rptr.3d 409].) Even granting that, in the press of trial litigation, counsel failed to recognize the issue below, appellate counsel is generally expected to perform "additional research that trial counsel simply will not have had the time to do." (*In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 409 [105 Cal.Rptr.2d 863].) As this appellate district explained over 50 years ago, "[c]ounsel's duty to assist the court includes a duty to study and to discuss the available authorities . . . ." (*Tate v. Canonica* (1960) 180 Cal.App.2d 898, 900 [5 Cal.Rptr. 28].) Careful research by counsel allows us to "have more confidence in

On March 28, 2011, we granted the petition for rehearing.[10] We also ordered ACMEA to file a response addressing the correctness of the Court's contentions about the Act's implementation date and whether the error identified by the Court would affect the result we had reached. ACMEA's response disputed the Court's claim regarding the Act's implementation date and argued that, even if correct, it would not change the result. The Court's reply took no position on whether its arguments regarding the Act's implementation date would dictate a different result. Since the Court has not disputed ACMEA's contentions on this point, we deem the matter submitted

---

the completeness and sufficiency of our own research . . . ." (*Id.* at pp. 900–901.) Such in-depth research is particularly necessary in cases such as this, which concern "[n]ew laws or parts of laws which have not come before the court at all . . . ." (Stern, Appellate Practice in the United States (2d ed. 1989) § 11.1, p. 312.) Had the Court's counsel raised the issue of the Act's implementation date either below or in its respondent's brief, rehearing could have been avoided. Counsel's failure has unnecessarily increased this court's workload and delayed resolution of this appeal.

[10] Generally, "[i]t is much too late to raise an issue for the first time in a petition for rehearing." (*Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 276 [68 Cal.Rptr.3d 499].) Counsel must ensure that all points are properly presented in the original briefs and argument before the matter is submitted (*Boydston v. Napa Sanitation Dist.* (1990) 222 Cal.App.3d 1362, 1370 [272 Cal.Rptr. 458]), for once the case is submitted, we assume that counsel "have presented all the reasons upon which they rely for an affirmance or a reversal of the judgment." (*San Francisco v. Pacific Bank* (1891) 89 Cal. 23, 25.) Our general refusal to consider arguments first presented on rehearing serves both judicial economy and fairness. It prevents counsel from arguing cases "in a piecemeal fashion." (*Smith v. Crocker First Nat. Bank* (1957) 152 Cal.App.2d 832, 837 [314 P.2d 237].) And it protects the opposing party from having to defend against new theories that were not previously put in issue or raised at trial. (*Hittle v. Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 391, fn. 10 [216 Cal.Rptr. 733, 703 P.2d 73].) Thus, arguments first raised on rehearing are usually forfeited. (E.g., *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092 [32 Cal.Rptr.3d 483, 116 P.3d 1162].) Forfeiture might seem particularly appropriate here, because the argument raised in the petition for rehearing was available from the very inception of the litigation, and it comes to us "unaccompanied by an explanation for the delay" in bringing it to our attention. (*Singh v. Lipworth* (2005) 132 Cal.App.4th 40, 43, fn. 2 [33 Cal.Rptr.3d 178].) Ordinarily, we would decline to consider the issue, and the Court would suffer the consequences of counsel's forfeiture. (See *County of Sacramento v. Loeb* (1984) 160 Cal.App.3d 446, 459, fn. 5 [206 Cal.Rptr. 626] [refusing to consider argument that claims at issue were precluded by controlling statutes, where statutory argument was first raised on rehearing].)

When good cause exists, however, we may exercise our discretion to address issues first raised on rehearing. (See *Mounts v. Uyeda* (1991) 227 Cal.App.3d 111, 120–121 [277 Cal.Rptr. 730] [considering constitutionality of statute where statute's validity was called into question by federal decision issued after this court's original opinion].) We may grant rehearing "for the purpose of correcting any error which [we] may have made in [our] opinion" where correction would likely produce either a different result or different reasoning. (*San Francisco v. Pacific Bank, supra,* 89 Cal. at p. 25; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2010) ¶ 12:15, p. 12-3 (rev. # 1, 2009).) This case involves a statute that has not been widely construed. We therefore granted the Court's petition to correct a mistake of law that might otherwise have led to confusion in later cases interpreting the Act. (See *In re Jessup* (1889) 81 Cal. 408, 471 [22 P. 742] [rehearing may be granted to correct "mistake of law" in court's opinion].)

on ACMEA's response. (See *County of Butte v. Bach* (1985) 172 Cal.App.3d 848, 867 [218 Cal.Rptr. 613] [where respondent made no reply to appellants' argument, court deemed matter submitted on appellants' brief].)

DISCUSSION

ACMEA challenges the decision below in several respects. First, it contends the trial judge misconstrued the Act by finding the Court did not change its Personnel Policies when it applied the SEIU MOU's definition of seniority to ACMEA members. Second, ACMEA asserts the trial judge erred in concluding that the Court did not violate its own policies when it refused to permit nine of the Individual Petitioners to demote in lieu of layoff. Third, ACMEA claims the trial judge wrongly concluded Fabian had no right to demote to the position of Division Secretary, Confidential in lieu of layoff. Finally, ACMEA argues the trial judge improperly determined that the Court's failure to grant the Individual Petitioners' request for hearings did not violate due process. We address these arguments in the order presented.

## I. *Standard of Review and Statutory Construction*

Our standard of appellate review is de novo. (*Steinhebel v. Los Angeles Times Communications, LLC* (2005) 126 Cal.App.4th 696, 704 [24 Cal.Rptr.3d 351].) We apply this standard because "the decisive facts are undisputed, [and] we are confronted with a question of law . . . ." (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].) The matter was submitted to the trial judge on stipulated facts, and the lower court resolved purely legal questions. (*Sea World, Inc. v. County of San Diego* (1994) 27 Cal.App.4th 1390, 1397 [33 Cal.Rptr.2d 194].) Thus, its statement of decision is not binding on us, and we are free to draw our own conclusions of law from the undisputed facts. (*Ibid.*)

■ The questions of statutory interpretation presented by this case are also subject to de novo review. (*City of San Jose v. International Assn. of Firefighters, Local 230* (2009) 178 Cal.App.4th 408, 424 [100 Cal.Rptr.3d 396].) We do not write on an entirely clean slate, however. Where the language of the Act is "the same or substantially the same" as that of the MMBA, the Legislature has mandated that the provisions of the Act be "interpreted and applied in accordance with the judicial interpretations" of the language of the MMBA. (§ 71639.3; compare § 3505 [definition of " '[m]eet and confer in good faith' " under MMBA] with § 71601, subd. (e) [definition of " '[m]eet and confer in good faith' " under Act].) We therefore look to case law interpreting the MMBA for guidance.

195 Cal.App.4th 325; 125 Cal.Rptr.3d 556 [May 2011]

II. *The Court Violated the Act By Failing to Meet and Confer with ACMEA Before Changing the Seniority Rights of ACMEA Members*

Before addressing ACMEA's statutory arguments, we first summarize the trial judge's statement of decision so that the arguments may be understood in context. After outlining ACMEA's contentions, we will analyze their merits. Finally, we will consider the arguments the Court raises in defense of the trial judge's decision.

A. *The Statement of Decision*

The trial judge's statement of decision acknowledged that the Court's Personnel Policies granted ACMEA members the right to demote to lower paying classifications without limiting those classifications to a specific bargaining unit. Thus, the trial judge agreed that before January 1, 2009—the effective date of the SEIU MOU—the Personnel Policies gave employees in ACMEA classifications the right to demote to classifications represented by SEIU, provided the ACMEA member had tenure in that classification and was bumping a less senior SEIU member.

The trial judge held that after January 1, 2009, the Court became bound by the definition of seniority in section 30.C.4 of the SEIU MOU, rather than by the demotion provisions of the Personnel Policies. The trial judge based this holding on his reading of the preface to the Court's Personnel Policies, which provides in relevant part: "Where these policies and rules conflict with provisions of a memorandum of understanding between the Court and a recognized employee organization, the MOU provisions will govern as to employees occupying positions in classifications covered by the MOU." Thus, the trial judge concluded, "the MOU's definition of seniority trumps the conflicting demotion provision in the Personnel Policies."

The trial judge ruled that seniority rights arise from contract and concluded that the Act allows for the renegotiation of such rights when MOU's are renegotiated. He recognized that the SEIU MOU changed the definition of seniority in such a way that it conflicted with the Personnel Policies, but held that under the language of the preface, the Court was bound by the SEIU MOU, not its Personnel Policies.

The trial judge went on to hold the Court's actions did not violate the Act. The statement of decision begins its analysis of this issue by noting that the Act does not define "seniority" and leaves trial courts and recognized employee organizations free to adopt their own definitions through the meet and confer process. The trial judge also pointed out that the Court had met and conferred separately with both ACMEA and SEIU before adopting their respective current MOU's.

The trial judge then found that "[a]*fter* the Personnel Policies were adopted, the SEIU changed the definition of seniority in its MOU in such a way that the definition conflicted with the definition used in the Personnel Policies." The trial judge further found that this change affected ACMEA members who were not represented by SEIU in that it "abrogated" their seniority with respect to SEIU classifications. While the trial judge properly recognized that an MOU "sets forth the terms and conditions of employment applicable to members of a specific union," he determined that section 30.C.4 of the SEIU MOU "governed the seniority of SEIU members *and former members*."[11] (Italics added.)

The trial judge held that the Court did not change its rules, policies, or practices by agreeing to the new definition of seniority in section 30.C.4 of the SEIU MOU. Instead, the trial judge found that only a contract between the Court and the SEIU had changed. Although the Personnel Policies supposedly did not change, the trial judge nevertheless went on to hold that ACMEA members had lost their right to demote—a right arising from the Personnel Policies—*because of* the definition of seniority in the SEIU MOU. Thus, on the one hand, the trial judge found that the Personnel Policies did not change, while on the other, he concluded that the bumping rights ACMEA members had enjoyed under those policies had been lost.

According to the trial judge, this did not violate the Act because the preface to the Personnel Policies required the Court to comply with the terms of any future MOU to the extent it was inconsistent with the Personnel Policies.[12] Thus, in agreeing to the SEIU MOU, the Court did not "reconsider" any prior accrued employee rights and therefore had no duty to meet and confer with ACMEA about the new definition of seniority. (Cf. § 71615, subd. (d).) Furthermore, the trial judge found that even if the Court had "reconsidered" a prior contractual obligation or right, the only right at issue was the new definition of seniority in the SEIU MOU. As a consequence, he concluded the Court had no obligation to meet and confer with ACMEA over changes in another union's MOU.

The trial judge did not find it significant that the Court meets and confers with both ACMEA and SEIU in formulating its Personnel Policies. He distinguished personnel policies, which are of general application, from the

---

[11] The trial judge reached this conclusion despite noting more than once that ACMEA was not a party to the SEIU MOU.

[12] The trial judge's rationale seems to have been that the preface to the Personnel Policies had always permitted the Court and a union to agree to provisions in an MOU that were inconsistent with the Personnel Policies. Since the preface permitted this procedure, the trial judge presumably reasoned that the Court had not "changed" its Personnel Policies when it agreed to a definition of seniority that admittedly conflicted with those policies.

terms of an MOU, which apply only to the members of a specific union, and observed that trial court personnel policies and union MOU's are subject to different provisions of the Act. Since the Act "contemplates that only *two* parties—an employer and *a* union—will negotiate changes in a union's MOU" but "makes no reference to the number of parties . . . that should negotiate changes in an employer's personnel policies," the trial judge concluded that the Act imposed no duty on the Court to meet and confer with two different unions over changes in one union's MOU.

### B. *ACMEA's Contentions*

ACMEA's statutory argument is premised on the stipulated fact that the Court's Personnel Policies would have entitled nine of the Individual Petitioners to demote to classifications in the SEIU bargaining unit in which they had held tenure. The parties agree that the only reason the nine were laid off rather than being permitted to demote was the disputed effect of the SEIU MOU. Specifically, the Court refused to allow the nine Individual Petitioners to demote because they had been out of the SEIU bargaining unit for more than six months. It therefore applied the definition of seniority in section 30.C.4 of the SEIU MOU to members of ACMEA in determining whether they could exercise bumping rights.

ACMEA contends the Court's action violated three separate sections of the Act, each of which required the Court to meet and confer with ACMEA before modifying the seniority rights at issue. First, ACMEA explains that the seniority and bumping rights at issue here arise from the Personnel Policies and the Layoff Policy, which were adopted November 15, 2001. As it did below, ACMEA argues the Act took effect on January 1, 2004, and therefore the Personnel Policies predate the implementation of the Act. ACMEA contends the Act mandates that the Court follow a specific process before modifying employee rights that arise from Court "personnel rules, policies, and practices" that antedate implementation of the Act. (§ 71639, subd. (b).) ACMEA points to section 71612, which states that passage of the statute itself was not intended to "be a cause for the modification or elimination of any existing . . . terms and conditions of employment of trial court employees." ACMEA concedes that the Act does not *prohibit* the elimination or modification of such terms and conditions of employment, but contends it requires that any changes be negotiated "through the meet and confer in good faith process." (§ 71612.)

Second, ACMEA notes that in the specific case of seniority rights, the Act mandates that as of the date of the Act's implementation, the employment seniority of trial court employees "as calculated and used under the system in effect prior to the implementation of this [A]ct, shall be calculated and used

in the same manner by the trial court." (§ 71615, subd. (c)(2).) The legislation further directs that in establishing local personnel structures, trial courts shall give consideration to protecting the rights accrued by trial· court employees under their current systems. (§ 71615, subd. (d).) Once again, the Act provides that such accrued rights "may be reconsidered subject to the obligation to meet and confer in good faith." (*Ibid.*)

Third, ACMEA relies on the obligation to meet and confer in good faith codified in section 71634.2 of the Act, which requires the trial court (or its designated representatives) to "meet and confer in good faith regarding wages, hours, and other terms and conditions of employment within the scope of representation . . . with representatives of the recognized employee organizations . . . [and to] consider fully the presentations as are made by the recognized employee organization on behalf of its members prior to arriving at a determination of policy or course of action." (§ 71634.2, subd. (a).) The Act's definition of "meet and confer in good faith" imposes an obligation on both the trial court and the recognized employee organizations to exchange information, opinions, and proposals, "and to endeavor to reach agreement on matters within the scope of representation." (§ 71601, subd. (e).)

ACMEA asserts that since no party disputes that (1) the Individual Petitioners' seniority and bumping rights are matters within the scope of representation[13] and (2) those rights arise from Personnel Policies predating implementation of the Act, the Court could not change those rights without first meeting and conferring with the Individual Petitioners' exclusive bargaining representative—ACMEA. (See §§ 71634.2, subd. (a), 71639, subd. (b).) In addition, ACMEA claims that the seniority rights at issue are specifically protected by section 71615, subdivision (c)(2) and thus any changes to such rights are subject to the meet and confer in good faith process. (§ 71615, subd. (d).)

### C. The Definition of Seniority in the SEIU MOU Constitutes a Change in Terms and Conditions of Employment Subject to the Duty to Meet and Confer in Good Faith

We agree with ACMEA that the Court violated its duty to meet and confer in good faith under section 71634.2, subdivision (a), and thus the trial

---

[13] The trial judge found that seniority rights fall within the scope of representation, and this finding is not contested on appeal. The trial judge's ruling is consistent with PERB precedent holding that seniority and bumping rights are matters within the scope of representation. (See *San Mateo City School District* (1984) PERB Dec. No. 375 [8 PERC ¶ 15021, p. 145] [contract proposals relating to use of seniority to govern order of layoffs, reemployment, and bumping rights were within scope of representation under Educational Employment Relations Act (§ 3540 et seq.)].) California courts generally defer to PERB's interpretation of statutes defining the scope of representation. (See *San Mateo City School Dist. v. Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 856 [191 Cal.Rptr. 800, 663 P.2d 523].)

judge erred in holding the Court did not contravene the Act. The parties agree that the Personnel Policies affected a "matter within the scope of representation" because they conferred seniority and bumping rights on ACMEA members. (§ 71634, subd. (a) [defining scope of representation]; *Steele v. L. & N. R. Co.* (1944) 323 U.S. 192, 203 [89 L.Ed. 173, 65 S.Ct. 226] [seniority rights are within scope of representation].) The parties have stipulated that, but for the SEIU MOU, the Personnel Policies would have entitled nine of the Individual Petitioners to demote to SEIU classifications in which they had previously held tenure. Indeed, the trial judge specifically found that the definition of seniority in section 30.C.4 of the SEIU MOU deprived the Individual Petitioners of these seniority rights by preventing them from demoting to SEIU classifications.

By curtailing the seniority and bumping rights of ACMEA members, it is apparent that the SEIU MOU purported to effect a change in "terms and conditions of employment within the scope of representation, as defined in Section 71634." (§ 71634.2, subd. (a).) As a consequence, before changing those terms and conditions, the Court was required to "meet and confer in good faith . . . with representatives of the recognized employee organization[] . . . ." and to "consider fully the presentations as are made by the recognized employee organization on behalf of its members *prior to arriving at a determination of policy or course of action.*" (§ 71634.2, subd. (a), italics added.) Because ACMEA is recognized as the exclusive representative of employees affected by the changes, we hold that the Court was required to meet and confer in good faith with ACMEA prior to making this change.[14] (§§ 71634, subd. (a), 71634.2, subd. (a).)

### D. *The Court's Counterarguments Are Unpersuasive*

The Court offers a number of arguments in support of the trial judge's decision. As we explain below, we find none of these persuasive.

#### 1. *The Seniority Rights at Issue Do Not Arise from Contract*

In rejecting ACMEA's argument that the Court was required to meet and confer over this change, the trial judge observed that seniority rights generally arise solely from contract and that unions are free to renegotiate the seniority provisions of their collective bargaining agreements. Quoting federal authority, the trial judge explained: "Negotiating seniority provisions is a duty uniquely within the province of the bargaining agent. The union is free to

---

[14] Our holding makes it unnecessary for us to resolve the parties' arguments concerning the implementation date of the Act. We therefore deny the Court's request for judicial notice, filed March 22, 2011. For the same reason, we have no need to consider the materials for which ACMEA seeks judicial notice. We therefore deny its April 6, 2001 motion for judicial notice.

renegotiate seniority provisions." (*Papcin v. Dichello Distributors, Inc.* (D.Conn. 1988) 697 F.Supp. 73, 80, affd. (2d Cir. 1988) 862 F.2d 304.)

We agree that seniority rights *generally* arise from contract, and we do not question a union's right to renegotiate seniority provisions on behalf of its members. But neither of those general propositions fits the facts of this case. First, the seniority and bumping rights at issue here arose not from an MOU negotiated by ACMEA or any other union, but rather from the Court's Personnel Policies. Second, unlike the cases cited in the statement of decision, the seniority rights with which we are concerned were not renegotiated by a union on behalf of its *own* members. Instead, the Court purported to change the seniority rights of *ACMEA members* in its negotiations with *SEIU*. None of the cases upon which the trial court relied involved a situation in which an employer altered the seniority rights of members of one union through an agreement with a wholly different union.[15] (Cf. *Social Services Union v. Alameda County Training & Employment Bd.* (1989) 207 Cal.App.3d 1458, 1462, 1464–1466 [255 Cal.Rptr. 746] [union's MOU with employer held to supersede public agency's personnel policies and procedures " 'regarding employees identified in [the MOU]' "].)

Thus, whether ACMEA, SEIU, or any other employee organization may renegotiate the contractual seniority rights of its own members is not the

---

[15] In addition to this factual dissimilarity, the cited cases involved legal issues unrelated to the question we consider here. (See *Driver v. U.S. Postal Service, Inc.* (6th Cir. 2003) 328 F.3d 863, 868–870 [alleged violation of union's duty of fair representation]; *Wightman v. Springfield Terminal Railway Co.* (1st Cir. 1996) 100 F.3d 228, 230 [suit under provisions of the federal Railway Labor Act (RLA), 45 U.S.C. § 151 et seq., prohibiting dual unionism]; *Dempsey v. Atchison, Topeka & Santa Fe Railway Co.* (7th Cir. 1994) 16 F.3d 832, 836, 840 [plaintiffs challenged side letter agreement as violation of RLA prohibitions on dual unionism and coercion]; *Smith v. Local 7898, United Steelworkers of America* (4th Cir. 1987) 834 F.2d 93, 96–97 [alleged violation of union's duty of fair representation to member]; *Gantlin v. West Virginia Pulp & Paper Co.* (4th Cir. 1984) 734 F.2d 980, 982, 989–993 [class action by black employees against paper mill and several labor unions claiming seniority provisions of collective bargaining agreement unlawfully disadvantaged black employees]; *McMullans v. Kansas, Oklahoma & Gulf Railway Co.* (10th Cir. 1956) 229 F.2d 50, 52–53 [suit under RLA to enjoin mandatory retirement provision of collective bargaining agreement]; *Elder v. New York Central Railway Co.* (6th Cir. 1945) 152 F.2d 361, 362 [suit by nonmember of union to recover wages lost when company failed to reinstate him after furlough]; *Corzine v. Brotherhood of Locomotive Engineers* (N.D.Ill. 1997) 982 F.Supp. 1288, 1289, 1292, 1294 [suit under RLA alleging breach of duty of fair representation and violation of prohibition on dual unionism]; *Papcin v. Dichello Distributors, Inc., supra,* 697 F.Supp. at pp. 73–74 [suit alleging breach of collective bargaining agreement and breach of duty of fair representation]; *Napier v. System Federation No. 91, etc.* (W.D.Ky. 1955) 127 F.Supp. 874, 876, 886 [suit under RLA alleging that seniority provisions of collective bargaining agreement were discriminatory and concerned matters of individual interest over which union was unauthorized to bargain].) The same is true of the case cited by the Court in its responsive brief. (*N.L.R.B. v. Internat. Assn. of Machinists* (9th Cir. 1960) 279 F.2d 761, 764 [suit alleging that collective bargaining agreement discriminated against employees by discouraging union membership].)

issue. The issue is whether the Act permits the Court to change its Personnel Policies and alter the seniority rights of employees who are members of ACMEA by meeting and conferring only with SEIU. It is clear the Court may not do so.[16]

### 2. The Preface to the Personnel Policies Does Not Require the Court to Apply the SEIU MOU to Employees Outside the SEIU Bargaining Unit

The argument that the preface to the Court's Personnel Policies required the Court to comply with the definition of seniority in the SEIU MOU rather than with the Personnel Policies misreads the language of the preface. By its plain terms, the preface provides that where the Personnel Policies "conflict with provisions of a memorandum of understanding between the Court and a recognized employee organization, the MOU provisions will govern *as to employees occupying positions in classifications covered by the MOU.*" (Italics added.) Since it is undisputed that ACMEA members do not occupy positions in classifications covered by the SEIU MOU, the provisions of that agreement do not displace the seniority rights granted by the Personnel Policies.

The Court argues the protections of section 30.C.4 of the SEIU MOU cannot be fully realized unless the definition of seniority in the SEIU MOU is applied to ACMEA members seeking to bump back into their previous positions in classifications represented by SEIU. The Court also contends that the SEIU MOU's definition of seniority applies only to SEIU positions, and it is therefore an issue that can be negotiated only with SEIU, which is the exclusive bargaining representative for employees in those classifications.[17] But by arguing that the protections afforded by section 30.C.4 of the SEIU MOU cannot be realized unless they are applied to former SEIU members who are now represented by ACMEA, the Court is essentially asking us to disregard the preface and impose the provisions of the SEIU MOU on

---

[16] The trial judge and the Court attempt to minimize the importance of the change in seniority rights by noting that it does not completely deprive the Individual Petitioners of their right to demote in lieu of layoff. The trial judge observed that only the five classifications represented by SEIU are "off limits to ACMEA members." The Court points out that ACMEA members can bump back into SEIU classifications if they have been out of those classifications for less than six months. The relevance of these arguments is unclear, since it is undisputed that nine of the Individual Petitioners would lose their demotion rights if the SEIU MOU's definition of seniority is applied to them. To the extent these contentions can be construed as an argument that any violation of the Court's statutory duty to meet and confer in good faith was merely de minimis, we reject them. (See *Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 662 [224 Cal.Rptr. 688, 715 P.2d 648].)

[17] This contention is unconvincing. It is difficult to see how the seniority rights of ACMEA members can be viewed as a matter falling exclusively within the SEIU's scope of representation.

employees who do not "occupy[] positions in classifications covered by the MOU." The Court does not explain why we should disregard this plain language and expand the reach of the SEIU MOU to members of a completely separate bargaining unit.

We therefore hold that the preface to the Personnel Policies does not permit the Court to apply the terms of the SEIU MOU to ACMEA's members. Our holding necessarily means that the Court violated its own policies when it denied the nine Individual Petitioners the right to bump back into their former SEIU classifications.

### 3. The Requirements of the Act Prevail over the Preface to the Personnel Policies

■ Even if we were to accept the trial judge's interpretation of the preface to the Personnel Policies, it could not affect the result we reach, because the Court may not absolve itself of duties imposed by the Act by adopting a policy that conflicts with the statute. (See *International Brotherhood of Electrical Workers v. City of Gridley* (1983) 34 Cal.3d 191, 202 [193 Cal.Rptr. 518, 666 P.2d 960] [scope of local government's rulemaking power in public sector labor relations is limited by the policies and purposes of the MMBA]; cf. *Sierra Craft, Inc. v. Magnum Enterprises, Inc.* (1998) 64 Cal.App.4th 1252, 1255 [75 Cal.Rptr.2d 681] ["local [court] rules and policies may implement but may not be inconsistent with statutory requirements"].) Construing the preface to permit the Court to apply provisions of the SEIU MOU to employees occupying positions in classifications not covered by that MOU would contravene the policies of the Act.

■ First, the Act gives trial court employees "the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations." (§ 71631.) Recognized employee organizations have "the right to represent their members in their employment relations with trial courts as to matters covered by this article." (§ 71633.) The Act requires trial court employers to meet and confer in good faith with representatives of recognized employee organizations to fully consider the presentations made by the recognized employee organization on behalf of its members. (§§ 71601, subd. (e), 71634.2, subd. (a).) The Act is therefore intended to provide " 'strong protection for the right of employees to be represented by unions of their own choosing.' [Citation.]" (*Service Employees Internat. Union v. Superior Court* (2001) 89 Cal.App.4th 1390, 1394 [108 Cal.Rptr.2d 505].)

Applying the SEIU MOU's definition of seniority to ACMEA members would violate both the statutory right of ACMEA members to be represented

by their chosen union and the statutory right of ACMEA to represent its members in their relations with the Court. (§§ 71631, 71633.) Moreover, since the Court has recognized ACMEA as the exclusive representative for employees in specified classifications, *only* ACMEA has the right to represent those employees on matters within the scope of representation. (Zerger et al., Cal. Public Sector Labor Relations (2010) Employee Organization Rights, § 30.05[1], p. 30-27 (rel. 17-6/2006) ["if an employee organization is recognized or certified as the exclusive representative for a unit of employees, only that organization has a right to represent employees"]; see *San Bernardino Public Employees Assn. v. City of Fontana* (1998) 67 Cal.App.4th 1215, 1220 [79 Cal.Rptr.2d 634] [MMBA "requires public agencies to negotiate exclusively with the collective bargaining units"].)

■ Second, applying terms in the SEIU MOU to employees outside of the SEIU bargaining unit would make the SEIU MOU binding on employees and employee organizations who are not parties to it. But the Act expressly makes such agreements "binding *upon the parties*." (§ 71639.5, subd. (a), italics added.) We find nothing in the statute that would make an MOU binding upon employees holding positions in classifications not covered by the MOU. (See *Valencia v. County of Sonoma* (2007) 158 Cal.App.4th 644, 652 [69 Cal.Rptr.3d 881] ["The MOU establishes certain terms of employment applicable to the members of the Union, but these terms are effective *only for the covered employees* . . . ." (italics added)]; cf. *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 618 [116 Cal.Rptr. 507, 526 P.2d 971] [noting that union's proposal on vacancies and promotions would not apply to deputy fire chief if he were found to be outside of bargaining unit].)[18]

Consequently, even if the trial judge were correct in his interpretation of the preface to the Personnel Policies, the language of the preface could not override the obligations imposed by the Act.

### III. *The Question of Fabian's Entitlement to Demotion Must Be Remanded**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[18] The Court cites a number of cases for the proposition that a negotiated MOU is fully binding on the parties and prevails over conflicting policy provisions. In those cases, however, the MOU was held binding on the parties to the MOU. The cases do not stand for the proposition that an MOU binds employees or employee organizations that are not parties to that MOU. (See, e.g., *Valencia v. County of Sonoma, supra,* 158 Cal.App.4th at pp. 648–649 [MOU between county and union held binding on county's civil service commission "because the Commission is merely a subunit of the County"]; *In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 336 [34 Cal.Rptr.3d 635] [noting that MOU is binding on contracting parties].)

*See footnote, *ante*, page 325.

## IV. The Individual Petitioners Were Not Entitled to Due Process Hearings

The trial judge entered judgment in favor of the Court on ACMEA's causes of action alleging violations of the Individual Petitioners' due process rights. In his statement of decision, the trial judge assumed that even if a pre-layoff proceeding of some kind was constitutionally required, the Individual Petitioners received all the process that was due to them. The trial judge found that ACMEA had forfeited any claim that the Court did not provide adequate postlayoff hearings by failing to support the claim with "timely, pertinent authority."

ACMEA challenges both rulings. We affirm the trial judge as to both of these claims, although we apply a somewhat different analysis to the claim regarding prelayoff hearings. (E.g., *Little v. Los Angeles County Assessment Appeals Bds.* (2007) 155 Cal.App.4th 915, 925, fn. 6 [66 Cal.Rptr.3d 401] [the trial court's judgment denying the petition for writ of mandate must be affirmed if it "is correct in result"].)

### A. No Prelayoff or Predemotion Hearings Were Required Because the Layoffs Were the Result of Budgetary Constraints

ACMEA challenges the trial judge's conclusion that the Court afforded the Individual Petitioners sufficient due process prior to their layoffs and demotions.[20] The Court contends the Individual Petitioners received adequate due process because extensive prelayoff hearings are not required in cases of "economic layoff." It further argues that such hearings would infringe on management prerogatives outside of the scope of representation. We hold that prelayoff hearings were not required because it is undisputed that the layoffs were imposed for budgetary reasons.

The Court relies on *Duncan v. Department of Personnel Administration* (2000) 77 Cal.App.4th 1166 [92 Cal.Rptr.2d 257] (*Duncan*) for the proposition that prelayoff hearings are not required when the layoff is due to budgetary constraints. (*Id.* at p. 1183.) Duncan was a public employee who was selected for layoff after the agency for which he worked implemented a reduction in force for budgetary reasons. (*Duncan*, at pp. 1170–1172.) He demoted in lieu of layoff, but nevertheless sued the state claiming it had violated his right to due process by failing to provide a prelayoff hearing. (*Id.* at pp. 1172–1173.)

---

[20] Eleven of the Individual Petitioners were laid off, while Fisher and Gee were permitted to demote in lieu of layoff. Like a layoff, a demotion constitutes the loss of a property right that may trigger a right to procedural due process. (See *Campbell v. State Personnel Bd.* (1997) 57 Cal.App.4th 281, 293 [66 Cal.Rptr.2d 722].)

■ To determine whether Duncan was entitled to a prelayoff hearing, the court analyzed three factors: (1) the private interest to be affected by the official action, (2) the risk of an erroneous deprivation of that interest through the procedures used, and (3) the government's interest.[21] (*Duncan, supra,* 77 Cal.App.4th at pp. 1179, 1180–1183.) The court ultimately concluded Duncan had no right to a prelayoff hearing. (*Id.* at p. 1183.) It first found Duncan's private interest in his employment to be of lesser importance because he had been demoted, not laid off, and that in any event, layoffs do not carry the stigma associated with termination for cause. (*Id.* at pp. 1180–1181.) The court then held that because the state had used objective criteria such as financial information and seniority in implementing the layoff, the risk of an erroneous prehearing decision was reduced. (*Id.* at p. 1182.) Finally, the court concluded that "in a time of financial crisis, the State has a significant interest in taking quick steps to resolve its economic woes." (*Ibid.*) *Duncan* explained that in cases of budgetary layoffs, the rule is that individual prelayoff hearings are not necessary given the impracticality and expense of holding them. (*Id.* at p. 1183; see also *California Sch. Employees Assn. v. Pasadena Unified Sch. Dist.* (1977) 71 Cal.App.3d 318, 322 [139 Cal.Rptr. 633] (*Pasadena Unified*) [due process does not require individual hearings where layoff results from employer's financial condition].)

*Duncan* noted that an exception to this rule "may exist where the layoff is pretextual." (*Duncan, supra,* 77 Cal.App.4th at p. 1183, fn. 12, citing *Franks v. Magnolia Hospital* (N.D.Miss. 1995) 888 F.Supp. 1310, 1315–1316 (*Franks*).) *Franks* cited several cases that had "recognized the existence of a 'reorganization exception' to the general rule that a property interest in continued employment gives rise to a right to a due process hearing upon termination." (*Franks,* at pp. 1315–1316.) This exception applies in cases in which the layoffs are the result of cost-cutting measures. (*Id.* at p. 1315.) *Franks* acknowledged that a few cases dealing with the so-called reorganization exception "recognize that the exception can be avoided by a showing that the reduction in force was merely a pretext for a personal agenda to terminate [the] employee." (*Ibid.*) The court went on to explain, however, that the exception for pretextual layoffs is limited: "[T]hose cases all involve situations in which either one position or very few positions were eliminated, and all of the terminated employees were the focus of a pretextual elimination. In a case such as the one presently before this court, where the

---

[21] Citing case law involving the discipline of public employees, ACMEA argues that one must consider a fourth factor—" ' "the dignitary interest of informing individuals of the nature, grounds and consequences of the action and of enabling them to present their side of the story before a responsible government official . . . ." ' [Citation.]" (*Brown v. City of Los Angeles* (2002) 102 Cal.App.4th 155, 174 [125 Cal.Rptr.2d 474].) We do not consider this factor, because ACMEA devotes only a single, conclusory sentence to it in its opening brief. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [79 Cal.Rptr.3d 588] ["We are not bound to develop appellants' arguments for them."].)

aggrieved employee is but one of many affected by a large-scale reduction in force, the reorganization exception would still apply." (*Id.* at pp. 1315–1316.)

Applying the analysis of *Duncan* and *Franks* to the stipulated facts, we conclude that the Individual Petitioners had no right to prelayoff or predemotion hearings. First, while the Individual Petitioners who were laid off doubtless have a significant private interest in retaining employment, that interest carries less weight here because, unlike a termination for cause, a layoff carries no stigma that would impair a laid-off employee's future job prospects. (*Duncan, supra,* 77 Cal.App.4th at p. 1181.) Fisher's and Gee's interests are "of little importance" because they remain employed, "albeit in a lower paying position" (*id.* at p. 1180), so theirs is not a case "where 'a fired worker [must] find employment elsewhere . . . .' " (*Ibid.,* quoting *Cleveland Board of Education v. Loudermill* (1985) 470 U.S. 532, 543 [84 L.Ed.2d 494, 105 S.Ct. 1487].)

Second, there is no dispute that the Court suffered a significant budgetary reduction for the 2009–2010 year. The Court therefore laid off 72 employees. In its brief, ACMEA admits that "the budget cut . . . led [the Court] to institute layoffs . . . ." The parties also stipulated that the individuals laid off from ACMEA positions were those with the least courtwide seniority in the classifications selected for layoff and that this accorded with the Court's Personnel Policies. In addition, none of the Individual Petitioners challenged the accuracy of the Court's seniority calculations. ACMEA thus admits that the Court's budgetary problems are genuine and that the layoffs were undertaken for fiscal reasons. (See *Perkowski v. Stratford Bd. of Education* (D.Conn. 2006) 455 F.Supp.2d 91, 96 [laid-off employee failed to raise genuine issue of material fact where she admitted that employer's fiscal crisis was genuine and employer eliminated her position in attempt to resolve crisis].) It has also stipulated that the individuals selected for layoff were those with the least seniority. "By using objective criteria, such as financial information and seniority, the [Court] reduce[d] the risk of an erroneous prehearing decision." (*Duncan, supra,* 77 Cal.App.4th at p. 1182.)

Third, given that 72 employees were laid off, we are not faced with a case "in which either one position or very few positions were eliminated, and all of the terminated employees were the focus of a pretextual elimination." (*Franks, supra,* 888 F.Supp. at pp. 1315–1316.) Instead, the Individual Petitioners are among the several dozen employees laid off as a result of the Court's reduction in budget. (*Id.* at p. 1316.) In such cases, prelayoff hearings are not required. (See *Pasadena Unified, supra,* 71 Cal.App.3d at p. 322.)

On appeal, ACMEA seeks to reframe its argument regarding the allegedly pretextual nature of the layoffs.[22] We reject this argument because we can find no evidence that it was raised below. Moreover, even assuming hearings into such issues would not impermissibly intrude upon the Court's management prerogatives, the Individual Petitioners would have to plead and prove that they were " 'not "expendable" at the time' " of their layoffs or demotions. (*Perkowski v. Stratford Bd. of Education, supra*, 455 F.Supp.2d at p. 96.) They have not done so.

    B.   *The Trial Judge Properly Concluded ACMEA Had Forfeited the Issue of Individual Petitioners' Entitlement to Postlayoff Hearings*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V.  *Conclusion*

We hold that the Court violated the Act by purporting to change the Individual Petitioners' seniority and bumping rights without first meeting and conferring in good faith with ACMEA, the recognized employee organization representing their interests. We reverse and remand so that the trial judge may fashion an appropriate remedy for this violation.

We hold that the issue of Fabian's possible entitlement to demotion in lieu of layoff must be remanded for further factual development. On remand, the parties may present evidence concerning how the specific job duties she performed in her former Secretary II classification compare to the duties of Division Secretary, Confidential, the classification to which she sought to demote. If, following remand, the lower court finds there was a violation of Fabian's demotion rights, it shall devise an appropriate remedy.

We affirm the judgment insofar as it concludes the Court did not violate the Individual Petitioners' due process rights.

---

[22] ACMEA now asserts that "13 of the 28 laid-off ACMEA members . . . had individualized reasons for believing that [the Court], in exercising its discretion to determine which classifications to target for layoff and how many of each classification should be laid off, relied upon disciplinary-type considerations. In other words, [the Individual] Petitioners would present evidence at their due process hearings that [the Court] considered multiple different scenarios for which types of positions to lay off and in what numbers, and that [the Court] looked at which employees would be affected by the different scenarios and then made its decision in certain circumstances based upon which employees it wanted to get rid of or demote for retaliatory and/or disciplinary reasons."

[*] See footnote, *ante*, page 325.

## Disposition

The judgment is reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

Jones, P. J., and Simons, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 24, 2011, S194112.